AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Eastern District of Arkansas

**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

NOV 15 2021

TAMMY H. DOWNS, CLERK
By: _____ DEP CLERK

*Sherri Artis*
_____
Plaintiff(s)

v.

*Andrew Saul Commissioner, Social Security Administration*
_____
Defendant(s)

)
)
)
)
)
)
)
)
)

*Complaint*

Civil Action No. *4:21CV1090-BSM*

This case assigned to District Judge *Miller*
and to Magistrate Judge *Kay*

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   *Andrew Saul, Commissioner Social Security Administration*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

*Sherri Artis
5908 Willow Way
North Little Rock, AR 72117*

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

CLERK OF COURT

Date: _____

_____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❑ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❑ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❑ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❑ I returned the summons unexecuted because _____ ; or

❑ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $ _____0.00_____ .

I declare under penalty of perjury that this information is true.


Date: _____          _____
                                                              *Server's signature*

                                                    _____
                                                              *Printed name and title*


                                                    _____
                                                              *Server's address*

Additional information regarding attempted service, etc:

## SOCIAL SECURITY ADMINISTRATION
### COMPLAINT OF DISCRIMINATION
Bases: Sex, Race, and Disability

**Complainant: Sherril Artis**
**Agency No.:  SEA-14-0434**
**EEOC No.: 551-2016-00168X**

Date:  **August 11, 2021**

This notice informs you of your right to appeal the Administrative Judge's decision and the Social Security Administration's (SSA's) final order in your discrimination complaint.

Within 30 days of your receipt of SSA's final order, you have the right to file an appeal with the Equal Employment Opportunity Commission (EEOC).  You should use the enclosed EEOC Form 573, Notice of Appeal/Petition to do so, and you should indicate what you are appealing. You may file an appeal by mailing the appeal to:

> Equal Employment Opportunity Commission
> Office of Federal Operations
> P.O. Box 77960
> Washington, DC  20013

> or by delivering the appeal to:

> Equal Employment Opportunity Commission
> Office of Federal Operations
> 131 M Street, NE
> Suite 5SW12G
> Washington, DC  20507-0100

Appeals of less than ten (10) pages may also be faxed to (202) 663-7022.

**A copy of your appeal must be provided to SSA when you file your appeal with EEOC.**

Send a copy of your appeal to:

> EEO Director
> Office of Civil Rights and Equal Opportunity
> Social Security Administration
> P.O. Box 17712
> Baltimore, Maryland  21235-7712

> or deliver it to:



# SOCIAL SECURITY
**August 11, 2021**

**VIA ELECTRONIC MAIL**

Mr. Moloy Good, Esq.
211 E 11th Street, #104
Vancouver, WA 98660
Moloy@goodlawclinic.com

RE:   Sheril Artis/SEA-14-0434-SSA
Filed:   July 30, 2014

This letter contains the Social Security Administration (SSA's) final order in the discrimination complaint referenced above filed by Sheril Artis (Complainant), whom you represent.

After receiving the complaint file, Complainant requested a hearing before an Equal Employment Opportunity Commission Administrative Judge (EEOC AJ). On June 4, 2021, and July 22, 2021, we received the EEOC AJ's decisions, dated June 4, 2021 and July 22, 2021, in favor of the Complainant. We are forwarding a copy of the EEOC AJ's decisions to you and Complainant for review and consideration. The EEOC AJ concluded that the facts in the case establish that the Agency subjected Complainant to a hostile work environment based on race, age and disability.

## IMPLEMENTATION STATEMENT

I have reviewed and considered the evidence of record and adopt the EEOC AJ's decision without modification. Accordingly, SSA hereby fully implements the decision.

## STATEMENT OF RELIEF

Complainant has prevailed on her claim of discrimination based on race, sex and disability. Accordingly, SSA will take the following actions:

1.  The Agency shall pay Complainant $100,000 in compensatory damages.
2.  The Agency shall conduct EEO training for managers, supervisors and human resources personnel in the Vancouver and Portland offices, to ensure they become aware, and continue to be aware of their obligations, responsibilities, and rights under EEO law, including the right to work in an environment free from discrimination and harassment based on race, age, and disability. This training shall not be less than 90 minutes long, and shall take place within six months of the implementation of this decision.
3.  The Agency shall post within the Vancouver Field office a copy of a notice, sufficient under EEOC standards, advising employees of this finding of discrimination. This notice should be signed by a duly authorized Agency representative and should be posted immediately upon the Agency's issuance of the Agency's final order. The notice should

SOCIAL SECURITY ADMINISTRATION     BALTIMORE MD 21235-0001

be maintained for a period of at least 90 days in conspicuous places where the Agency customarily posts notices that it expects its employees and applicants for employment to see. The Agency should take all reasonable steps to ensure that the notices are not altered, defaced, or covered by any other material. The notices should advise employees and applicants of their rights to be free of employment discrimination, and their EEO remedies.

4. The Agency shall pay Complainant's counsel, Moloy Good, the total amount of $32,739.32 in attorney's fees.

## FINAL ORDER

It is the final order of SSA that Complainant established the Agency subjected her to discrimination on the bases alleged, as set forth in the Administrative Judge's decision.

The enclosed notice explains your/Complainant's right to appeal the AJ's Decision and/or the Agency's final order. Complainant should use the enclosed EEOC Form 573, Notice of Appeal/Petition, if Complainant chooses to file an appeal.

Sincerely,

*(for)* Claudia Postell
Equal Employment Opportunity Director
Office of Civil Rights and Equal Opportunity

Enclosures:
AJ's Decision
EEOC Form 573

cc:
Molly B. Powell
Sherril Artis
Ryan Lu
Joseph Langkamer



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Seattle Field Office**

Federal Office Building
909 First Avenue, Suite 400
Seattle, WA 98104-1061
Seattle Direct Dial: (206) 576-3000
FAX (206) 220-6911
Website: www.eeoc.gov

| | |
|---|---|
| Sherril Artis,<br>        Complainant,<br><br>                        v.<br><br>Andrew Saul,<br>Commissioner,<br>Social Security Administration,<br>        Agency. | ) EEOC No.  551-2016-00168X<br>) Agency No. SEA-14-0434-SSA<br>)<br>)<br>)<br>)<br>)<br>)   DECISION AFTER HEARING BY<br>)   ADMINISTRATIVE JUDGE<br>)<br>)<br>)   Date:  June 4, 2021<br>)<br>) |

## I.    STATEMENT OF THE CASE

Pursuant to 29 C.F.R. § 1614.109, on March 23, 2021, I held a hearing electronically via Microsoft Teams, on the discrimination complaint filed by Ms. Sherril Artis ("Artis" or "Complainant") against Andrew Saul, the Commissioner of the Social Security Administration ("SSA" or "Agency").  I issued a Decision on April 20, 2021, finding that the Agency subjected Complainant to a hostile work environment on the basis of race, age and disability.

On June 3, 2021, I held a hearing regarding damages.  During the hearing, Complainant presented evidence related to damages.  Complainant Artis and her spouse Lloyd Artis testified.  Complainant also provided designated hearing testimony from Lisa Demoreno, April Sandstrom and Imelda Incardona in support of her request for damages.  This is a decision by a U.S. Equal Employment Opportunity Commission ("EEOC" or "Commission") Administrative Judge issued pursuant to 29 C.F.R. § 1614.109(i).

Complainant is seeking:  backpay for five years (the years she would have continued to work had she not been subjected to harassment) and backpay for three years as a rehired

3350 West High Rise Building

**COVID-19 Information on Filing Appeals:**

If Complainant plans to file an appeal with the EEOC, please note that EEOC may be unable to docket and adjudicate Complainant's appeal at this time if Complainant files the appeal on paper. Because paper submissions will likely not be received by EEOC for the foreseeable future, the Commission has advised using its electronic portal for new cases, by all parties. The EEOC Public Portal address and instructions are provided below.

Also, please be advised that Complainant should forward a copy of the appeal to the agency. Please use the following mailbox: ^DCHR OCREO Hearings and Appeals Mailbox: DCHR.OCREO.Hearings.and.Appeals.Mailbox@ssa.gov.

**Complainants Now Have the Ability to File Online.** The EEOC Public Portal is a secure, web-based application that allows individuals with discrimination complaints against the government to electronically request a hearing before an EEOC AJ. **To file your hearing request using the Public Portal:**

- Create an account.
- Request a hearing on the merits of your complaint before an EEOC AJ.
- Identify a representative and provide their contact information.
- Submit and receive documents supporting the hearing request.

**You also have the right to file a civil action in an appropriate U.S. District Court:**

(a) Within 90 days of receipt of the agency final action on an individual or class complaint;

(b) After 180 days from the date of filing an individual or class complaint if agency final action has not been taken;

(c) Within 90 days of receipt of the Commission's final decision on an appeal; or

(d) After 180 days from the date of filing an appeal with the Commission if there has been no final decision by the Commission.

(e) After filing an appeal with the Commission from an agency final action, the complainant, class agent, or class claimant may withdraw the appeal and file a civil action within 90 days of receipt of the agency final action. If the complainant, class agent, or class claimant files an appeal with the Commission from a final agency action and more than 90 days have passed since receipt of the agency final action, the appellant may file a civil action only in accordance with paragraph (c) or (d) of this section.

If you decide to file a civil action and you do not have or cannot afford the services of an attorney, you may request that the Court appoint an attorney to represent you. You may also ask that the Court permit you to file the action without payment of costs, fees, or other security.

**Granting or denying your request is within the sole discretion of the Court.** Both the request and the civil action <u>MUST BE FILED WITHIN NINETY (90) CALENDAR DAYS</u> of the date you receive the final order or final decision from SSA or the EEOC's final decision. Filing a request for an attorney does not extend your time in which to file a civil action.

**If you decide to file a civil action, you must name the Acting Commissioner of SSA as the defendant. Failure to name the Acting Commissioner may result in dismissal of your case.** If you file a civil action, administrative processing of your complaint will end.

1

Sherril Artis v. Andrew Saul, Commissioner, Social Security
Administration

EEOC No. 551-2016-00168X

Agency No. SEA-14-0434-SSA

November 10, 2021

Sherril Artis, 5908 Willow Way, North Little Rock Arkansas 72117 v.
Andrew Saul, Commissioner, Social Security Administration.

I, Sherril Artis, invoke federal jurisdiction after a final order has been
declared by the Social Security Administration on the damages that the
agency caused in their guilt in violating my civil rights due to my age, my
race, and my disability.U.S.C. 42 U.S.C. 1983 or 28 U.S.C. 1343. The
United States District Eastern District Court of Arkansas is the proper
venue for this case.

May 10, 2013 email to **Acting Commissioner, Carolyn Colvin.** I outlined
some of the unsettling tactic that managers were using to intimidate
and harass staff.  Commissioner check my prior EEO contacts.  I pointed
that I had been forced to withdraw my complaint by EEO and that the
agency had not been timely in granting accommodations.  EEO forced
my withdrawal so that the two discriminating mangers could be

2

promoted. Karen Jesser and Terry Temple. After the transfer was

granted, EEO ramped up the pressure for me to withdraw. Their

reasoning was that I had gotten away from the other office and that I

should pursue getting back into management "leadership image". This

can be easily verified through agency records. Attached is also the final

letter to retiring Area Director, Beth Hidano. I could have ignored all of

these things, if they would just let me be promoted. I believe this

behavior is collusion and should be outlawed.


**January 14, 2014** email to **Seattle Assistant Regional Commissioner,**

**Alan Heim.** Chris Detzler had **refused to accommodate** me with a

workload that was more focused , more self-directed, and more self-

controlled. Chris granted permission for me to speak to Alan Heim.

Alan had once thought   highly of me and my ability to meet deadlines.

He called me to mentor a young Chris Detzler. Chris had been

promoted to MSS and Alan said I was one of the best MSS's in the area.

I was promoted to Assistant Manager in Beaverton and could not

mentor Chris. Alan Heim expressed his disappointed that I would not

3

be able to mentor.  Alan later called me and offered me the Manager's

position in Longview Washington.  Under Alan Heim's as the Area

Director, I received many accolades. Including a regional

Commissioner's Citation and numerous performance awards and

request to assist.   Finally, Alan accommodated me with a downgrade to

care for my mother and to address my health issues.

 I was seeking an opportunity to see how my mental and physical health

would respond without harassment. Social Security managers had

harassed me since 2009.  I wanted to present to Alan or Steve Hughes a

planned high profiled workload for me to tackle, like fraud.  **See**

**attached email to Shane Winder of OIG dated December 11, 2013**.

Alan focused totally on my health, which was not needed, and it was a

distraction from the harassment that I was experiencing.  Alan said that

he would have a Gail Leon to contact me.   I never heard from her until I

saw her retirement announcement.

**July 2, 2014,** I again emailed Alan Heim. The harassment and hostility

were so degrading. I told him about the harassment. I begged him to

help me. I asked him to make Chris and Amy stop with the belittling, the

4

put downs and the name calling. I was being denied lunches, breaks,

and bathroom privileges. I could not control my blood sugars without

food.   I was wetting my pants. Amy refused to allow me to attend a

once monthly lung class to teach me how to protect my damaged lungs.

I had sarcoidosis.  She would not clear my schedule for that one day

lung class.  She told me I need to do the work or trade with someone.  It

was the cruelest thing I had ever experienced.   I needed help.  Alan

offered no assistance.   I begged! I told him I would drop the EEO, if he

would just make it stop.

**July 2014,** Email to Alan Heim.  After the terrifying meeting with Chris

and Amy in May 2014. I decided to contact the prior office, where Amy

had worked. I had trained in that office when I was promoted into

management, and I knew the staff   **Amy told me that she was a**

**woman of integrity, unlike myself, whose life had been riddled with**

**strife.** Her statement made me wonder, if I was really a problem or did

she think so lowly of me because I was black!   When Amy Throop was

moving into management, Terry Temple and Karen Jesser tasked me

with overseeing several of Amy's operations. I worked remotely

because I was in Portland and Amy was in The Dalles. I processed her

5

timekeeping/payroll, worked her overpayments, worked her windfall offsets, trained her SSI staff. All, while maintaining a full workload in my own office! **With Amy's proven discrimination in the Dalles –How was Amy was allowed to transfer to Vancouver?** The agency grossly neglected my health, my rights to reasonable accommodations, and my right to my career to protect Amy Throop! Amy was unstable and she was frightening. **Amy was aware of my prior filing with EEO.  Amy and I had worked in the same district.  The harassment and retaliation that Chris Detzler had exhibited toward me since 2012, dangerously ramped up after Amy arrived.  It became inhumane** After Amy and Chris forced my retirement, the agency transferred Amy to an office In Idaho. To create even more victims

**November 19,2020** Instant message sent to Alan Heim after the disturbing August 2020 mediation.  I was in the middle of a mental crisis! How could Alan allow this to be done. The content is sad but it shows my state of mind.

**March 26, 2015** Email to **Seattle Regional Commissioner, Stanley Friendship.** Informing him of the ongoing harassment that was forcing

6

my retirement. I felt so threatened. I should have been able to leave when I wanted. **Stanley Friendship apologized for the harassment and said he wish I was retiring under more pleasant circumstance.** Stanley did assist me in securing a waiver for my health insurance. I only needed 9 months to be vested for my insurance. Why would I plan to retire and must go 6 months without health insurance when I was so sick? I was two years post retirement eligible. I was forced out and I still suffer from the trauma of these experiences to this day!

**03/2015** during my last days working, I tried to gather as much as I could to stay connected with the job. To stay employed! I copied information on becoming are-employed annuitant on 03/09/2015. I filed a workmen's comp claim on 02/20/2015. I believed and still believe that my ongoing mental health issues are directly related to the behaviors of the Social Security administration and EEOC. Lastly, I thought that EEOC would resolve my case in a timely manner and grant me my job back! I was 56 when I filed my EEO case, and I am 63 when it is finally resolved. My sarcoidosis has been in remission since 2017. I got my first Social Security disability check in 2018. Almost 3 years after I retired, with no word on the discrimination. I could have opted for a

7

closed period of disability and still gone back to work as late as 2018.

But it took EEO three more years.

**After 39 years of service, I did not get an office retirement party.** Chul

Shirts escorted me out of the office on 03/31/2015, like I was a criminal.

Chul followed Chris' orders. He gave Chris the ammunition that Chris

needed to end my career. Chris had it on paper that Sherril Artis was

rude and insubordinate. Just like Chris and Amy had said. Now Chris has

it written by someone other than him or Amy. If workmen's comp was

approved I could be off to heal and later return to work or plan for my

retirement.   **I filed for a trial Retirement with the option of being able**

**to return to work by 03/2016. Why would I opt to return to work by**

**03/2016, if I wanted to retire in 02/2016? My attorney said this could**

**have netted a higher award. Moloy Good refused to appeal!**


The time that I was subjected to the hostile work environment, the

entire Seattle Region executive staff was aware of the hate being

practiced against me. You can see from my repeated pleas for help, for

8

accommodations, to make it stop! Was it my health or was it the harassment?

My planned retirement was always age 62. With the option of coming back as a rehired annuitant. My husband knew this. My husband is four years my senior and his planned retirement was always 2016, when he was 62. He wanted me to retire immediately in 2014 because he was sick of hearing about Amy and Chris. We compromised on 2016 because I would have my insurance and 40 years of government service. Due to the harassment, I could not make it to the 2016.

My husband's nonsupport consisted of his refusal to speak to Chris about the harassment. Chris and Amy's behavior was affecting my entire life. Regional Office would not help. My husband's feared, as a black man, was that he would be accused of harassment for getting involved. He was probably right. **Chris slandered me by telling the judge and the Social Security executives that my family attacked him, that I told him that I don't like white women, and that I requested Teri to supervise me because she has black people in her family. It is slander! Done to destroy me and for him to be believed.  Chris's**

9

**slander caused the Social Security Administration to fail to act in a**
**reasonable timely manner to help me preserve my mental health.**
**Which has been the biggest loss that I have suffered. That is**
**something that the agency cannot replace**

**The stress of my son from birth and throughout this traumatic**
**experience:** Lloyd II was over 30 years old at this time! I had been
promoted and received awards with this same disabled son. The agency
always knew that my son had a learning disability. SSA supported me in
my pursuit of treatment for him and even allowed me to bring him to
work during "bring your kid to work day". During the years of
harassment, I don't remember thinking much about Lloyd II. I was
thankful that he had some independence and did not need me. His
behavior was his own. The fault was all with the Social Security
Administration. Award me for the years that I could have worked, if not
forced out my Chris Detzler. My failed health was directly related to the
job-related stress. My diabetes is in control, sarcoidosis in remission,
but I am plagued by the trauma created from this experience.

10

I have been unable to find an attorney to represent me on this matter.

My depression and anxiety have made it a challenge for me to

complete these requirements.  If my case is accepted, please assist me

in securing representation.

Documentation showing that I am a Jantz class action member.  I have called the attorneys that were involved in the case.  I have attempted resolution since 2017.  I updated them on my address changes.  In 02/2020 I contacted Senator John Boozman, of Arkansas, to look into the matter.  I received a phone call from Social Security in 2020 stating that they were working on the matter.  To date, I have received no resolution.  Please note that the tactics that SSA used in the Jantz case are the same as what they used to discriminate against me with.

Deadline for submission was February 26, 2015.  I faxed my information on 02/15/2015.

# Jantz Class Member information

JOHN BOOZMAN
ARKANSAS

141 HART SENATE OFFICE BUILDING
WASHINGTON, DC 20510
202–224–4843

**United States Senate**

WASHINGTON, DC 20510

COMMITTEES:

AGRICULTURE, NUTRITION, AND FORESTRY
CHAIR, COMMODITES, RISK MANAGEMENT, AND TRADE

APPROPRIATIONS
CHAIR, HOMELAND SECURITY

ENVIRONMENT AND PUBLIC WORKS
CHAIR, FISHERIES, WATER, AND WILDLIFE

VETERANS' AFFAIRS

BUDGET

February 20, 2020

Mrs. Sherril A. Artis
9309 Woodruff Road
Sherwood, AR 72120-4431

Dear Sherril,

Thank you for completing the authorization form regarding your recent concerns.

To help, I contacted the appropriate officials to make an inquiry on your behalf and will provide an update as soon as I receive a response.

Please be assured of my interest and cooperation as your U.S. Senator.

Sincerely,

John Boozman
U.S. Senator

JB: sf

Jantz

From:  sherril artis (sherril.artis2018@yahoo.com)
To:     theartis2002@yahoo.com
Date:  Monday, February 17, 2020, 11:11 PM CST

# REQUEST HELP WITH AN AGENCY

To start the process, simply complete the online form below, print and sign it and then then fax it to (479) 725-0408. You can also mail your signed authorization form to my Lowell office (213 West Monroe, Suite N, Lowell, AR 72745) if you do not have access to a fax machine.

## *Request Help With an Agency*



UNITED STATES SENATOR • ARKANSAS

213 W. Monroe, Suite N
Lowell, Arkansas 72745
479-725-0400

## John Boozman

Fax: 479-725-0408                                   http://www.boozman.senate.gov

**CONTACT INFORMATION**

Prefix: Mrs.
First Name: Sherril
Middle Initial: A
Last Name: Artis
Address 1: 9309 E Woodruff Ave
Address 2:
City: Sherwood
State: AR
Zip Code: 72120
Home Phone: 3609369407
Cell Phone:
Email Address: tt_nation@yahoo.com
Date of Birth:

Is this request being made on behalf of another individual?
No

**ADDITIONAL PERSON'S INFORMATION**

First Name:
Last Name:
Address:
Address 2:
City:
State:
Zip Code:
Home Phone:
Cell Phone:
Email Address:
Date of Birth:

What problem can I help with?
Other

Please provide a brief explanation of the problem:
In 2014 I was registered as a class action member of the Jantz V Barnhart law suit. I was living in Washington State at the time and Senator Patty Murray was the senator that I would have once used for this matter but I am now a resident of the state of Arkansas since 2017. Over the years I have contacted the attorney for this case to keep them abreast of address changes and so forth. It is my understanding that this case has since been settled. I have called and left messages with no response from these attorney for over six months. Would you be able to assist me with getting the status of this case and if anyone will be contacting me.

Social Security Number: 432132685

Civil Service Number: csa8757264

Veteran's Claim Number:

Branch of Service and Rank:

Alien Registration Number:

In accordance with the provisions of the Privacy Act, I hereby authorize Senator John Boozman or a member of his staff to make the appropriate inquiry about this issue on my behalf.

SIGNATURE _____

DATE 2/17/2020

**EXHIBIT C(2)**

*Jantz, et al. v. Social Security Administration,* EEOC Case No.: 531-2006-00276X

## CLAIM FORM

**If you wish to receive a Settlement Award in the form of a monetary payment under the terms set forth in the Notice of Proposed Class Action Lawsuit and Settlement Agreement that the Notice describes, you must complete and return this Claim Form to the Claims Administrator by February 26, 2015.**

### MAIL OR EMAIL OR FAX TO:

SSA Disability Class Action
Claims Administrator
c/o Angeion Group
1801 Market Street
Suite 660
Philadelphia, PA 19103
Telephone: 215-563-4116
Fax: 215-525-0209
Email: speneda@angeiongroup.com

| Name (please print): *Sherri Arts* | Date of Birth: *5/6/1958* |
|---|---|
| Address: *1309 SE Park Crest Vancouver WA 98683* | Phone No.: *360 936-9407* |
| | Email: *bt_nation@yahoo.com* |

If your address changes, you must send the Claims Administrator your new address to ensure that you receive any payment to which you are entitled.

**Please complete the below information to the best of your ability.**

A. If you retired from SSA, please provide the date (at least month and year) of your retirement in the space below. If you are a current SSA employee or a separated SSA employee, leave this space blank.

   I retired from SSA on _____ [date].

B. If you separated from SSA, please provide the date (at least month and year) of your separation below. If you are a retiree or a current employee of SSA, leave this space blank.

   I separated from SSA on _____ [date].

C.  If you filed one or more formal EEOC complaint(s) against SSA alleging disability discrimination on or after August 22, 2003, please list the number of such complaints below.  If not, please leave this space blank:

I filed $2$ formal EEOC complaints against SSA alleging disability discrimination on or after August 22, 2003.

I filed such complaints on the following dates   *2010    and   2014*
[provide dates to the best of your ability].

D.  Only current or former employees who worked at SSA between August 22, 2003 and October 30, 2014, who have a targeted disability, meaning *deafness, blindness, missing extremities, partial paralysis, complete paralysis, convulsive disorders, mental retardation, mental illness, or genetic and physical conditions affecting limbs and/or spine*, and as further specifically enumerated and updated in Part 1, Targeted/Severe Disabilities, on the left-hand column of the enclosed Self Identification of Disability form, are eligible to receive a Settlement Award.  Please check the box below if applicable to you:

By checking here  ✓ , I affirm that I have a targeted disability as defined in the preceding paragraph and as further specifically enumerated and updated in Part 1, Targeted/Severe Disabilities, on the left-hand column of the enclosed Self Identification of Disability form.

If you affirmed above that you have a targeted disability, then please proceed to the next question.  If not, then you are not a Settlement Class Member and you are not entitled to a Settlement Award, and should not return this Claim Form.

E.  FOR CURRENT SSA EMPLOYEES ONLY:

You may elect either of the two options stated below:

✓ I have completed and enclose the Self-Identification of Disability form attached hereto and have entered the code on the top right-hand corner that describes my targeted disability. I understand that a copy will be provided to SSA;

**OR**

___ I have enclosed medical documentation of my targeted disability.

F.  FOR FORMER SSA EMPLOYEES:

___ I have enclosed medical documentation of my targeted disability.

G.  Check the appropriate box(es) below.  If the statement that appears next to the box does not apply to you, leave the box blank:

2

1. ___ I did not apply for any positions for which I made it onto a Best Qualified List ("BQL") between August 22, 2003 and October 30, 2014.

If you checked Box 1 above, you should not proceed further. Simply sign and return the Claim Form.

2. ✓ Between August 22, 2003 and October 30, 2014, I applied for one or more positions for which I made it onto a BQL and was not selected for the position.

If you checked Box 2 above, please proceed to Box 3. If you did not check Box 2 above, you should not proceed further. Simply sign and return the Claim Form.

3. Between August 22, 2003 and October 30, 2014, the total number of instances in which I made it onto a BQL but was not selected from the BQL is _5_ [insert number].

4. _2_ On one or more occasions between August 22, 2003 and October 30, 2014, I made it onto a BQL from which I was not selected where the position would have been a higher grade (GS) level than the position I occupied at the time.

5. The earliest occasion between August 22, 2003 and October 30, 2014, when I made it onto a BQL for a position that was at a higher grade (GS) level than the position I occupied at the time, but was not selected from the BQL, was on or about _2010_ [date]. At that time, I applied for the position of _Branch Manager_ [describe position to the best of your ability] in _Seattle Dallas_ component/region. (If you know the number of the vacancy announcement, or any additional descriptive information about the position, please          include          such          information          here:
_____
_____.)

**In order to receive your Settlement Award, please affirm the following by signing below. You must also include the documentation that is described in Section E above (for current SSA employees), or Section F above (for former SSA employees).**

I hereby declare under penalty of perjury that (1) the foregoing is true and accurate to the best of my knowledge, and (2) I wish to participate in the Settlement and receive any Settlement Award for which I qualify.

Date: ___1/27/15___                    _____
                                       Signature

3

## SELF-IDENTIFICATION OF DISABILITY
*(see instructions and Privacy Act information on reverse)*

| Last, Name, First Name, and M | Date of Birth (mm/yy) | Social Security Number | ENTER CODE HERE———> | 91 |
|---|---|---|---|---|
| Artis, Sherri A | 5/6/58 | 432-13-268 | | |

**Definition:**
An Individual with a disability: A person who (1) has a physical impairment or mental impairment (psychiatric disability) that substantially limits one or more of such person's major life activities; (2) has a record of such impairment; or (3) is regarded as having such an impairment. This definition is provided by the Rehabilitation Act of 1973, as amended (29 U.S.C. 701 et. seq.).

**Purpose:**
Self-identification of disability status is essential for effective data collection and analysis. The information you provide will be used for statistical purposes only and will not in any way affect you individually. While self-identification is voluntary, your cooperation in providing accurate information is critical.

### Part I.  Targeted/Severe Disabilities

**Hearing**
18 - Total deafness in both ears (with or without understandable speech)

**Vision**
21 - Blind (inability to read ordinary size print, not correctable by glasses, or no usable vision, beyond light perception)

**Missing Extremities**
30 - Missing extremities (missing one arm or leg, both hands or arms, both feet or legs, one hand or arm and one foot or leg, one hand or arm and both feet or legs, both hands or arms and one foot or leg, or both hands or arms and both feet or legs)

**Partial Paralysis**
69 - Partial paralysis (because of a brain, nerve or muscle impairment, including palsy and cerebral palsy, there is some loss of ability to move or use a part of the body, including both hands; any part of both arms or legs; one side of the body, including one arm and one leg; and/or three or more major body parts)

**Complete Paralysis**
79 - Because of a brain, nerve or muscle impairment, including palsy and cerebral palsy, there is a complete loss of ability to move a part of the body, including both hands; one or both arms or legs; the lower half of the body; one side of the body, including one arm and one leg; and/or three or more major body parts

**Other Impairments**
82 - Epilepsy
90 - Severe intellectual disability
91 - Psychiatric disability
92 - Dwarfism

### Part II.  Other Disabilities

**Hearing Conditions**
15 - Hearing impairment/hard of hearing

**Vision Conditions**
22 - Visual impairments (e.g., tunnel or monocular vision or blind in one eye)

**Physical Conditions**
26 - Missing extremities (one hand or one foot)
40 - Mobility impairment (e.g., cerebral palsy, multiple sclerosis, muscular dystrophy, congenital hip defects, etc.)
41 - Spinal abnormalities (e.g., spina bifida, scoliosis)
44 - Non-paralytic orthopedic impairments: chronic pain, stiffness, weakness in bones or joints, some loss of ability to use part or parts of the body
51 - HIV Positive/AIDS
52 - Morbid obesity
61 - Partial paralysis of one hand, arm, foot, leg, or any part thereof
70 - Complete paralysis of one hand
80 - Cardiovascular/heart disease with or without restriction or limitation on activity; a history of heart problems w/complete recovery
83 - Blood diseases (e.g., sickle cell anemia, hemophilia)
84 - Diabetes
86 - Pulmonary or respiratory conditions (e.g., tuberculosis, asthma, emphysema, etc.)
87 - Kidney dysfunction (e.g., required dialysis)
88 - Cancer (present or past history)
93 - Disfigurement of face, hands, or feet (such as those caused by burns or gunshot wounds) and noticeable gross facial birthmarks
95 - Gastrointestinal disorders (e.g., Crohn's Disease, irritable bowel syndrome, colitis, celiac disease, dysphexia, etc.)
98 - History of alcoholism

**Speech/Language/Learning Conditions**
13 - Speech impairment - includes impairments of articulation (unclear language sounds), fluency (stuttering), voice (with normal hearing), dysphasia, or history of laryngectomy
94 - Learning disability - a disorder in one or more of the processes involved in understanding, perceiving, or using language or concepts (spoken or written) (e.g., dyslexia, ADD/ADHD)

**Other Options**
01 - I do not wish to identify my disability status. (Please read the notes on the next page.) (Note: Your personnel officer may use this code if, in his or her judgment, you used an incorrect code.)
05 - I do not have a disability.
06 - I have a disability, but it is not listed on this form.

SF 256
Revised July 2010
Previous editions not usable

Attached are the emails sent to the Seattle Regional Commissioner, Stanley Friendship.  Mr.  Friendship assisted me in securing my health insuranceMr.  Friendship apologized for the harassment that I was experiencing and said he wished I was retiring under more pleasant circumstances.

*Refuse sent notice to the Regional Commissioner I told him about the discrimination and the Stress no Help from [illegible] on stopping Chris Dettler And [illegible]*

**From:** Friendship, Stanley C.
**Sent:** Thursday, March 26, 2015 2:40 PM
**To:** Artis, Sherril
**Cc:** Heim, Alan; Mezo, Liana; Hughes, Stephen
**Subject:** RE: My retirement

Hi Sherril,

I am sorry to hear about your situation, and wish you were leaving under more pleasant circumstances.  I will look into getting you an exemption for your Health Insurance coverage.  We will get back to you soon.

Take care,

Stanley

### CHARACTER IS DOING WHAT IS RIGHT, EVEN WHEN

### NO ONE IS WATCHING.

### UNKNOWN

**From:** Artis, Sherril
**Sent:** Thursday, March 26, 2015 8:27 AM
**To:** Friendship, Stanley C.
**Subject:** My retirement

Stanley,

I have worked for this agency for 39 years.   I am going to retire on 03/31/2015 due to ongoing harassment and discrimination in the Vancouver office.   I cannot control my health issues due to the stress.   I am leaving because it is needed for my health and for the happiness of management in this office.   I have never been written up or reprimanded in all of my years of service, but on 02/20/15 that is what happened.   I was so shaken, that I finally realized that they are serious about wanting me gone.   I have agreed to retire, but I want the reprimand to be removed from my record.   Chris has told the union that he will remove it the day after I retire, it is sad that Chris Detzler has not shown me any integrity in the past.   I have written to Steve Hughes, Area Director, on this matter but I have not heard from him.

The other issue that I have is that I have diabetes and sarcoidosis.   I need my health insurance to carry over into retirement.   If it was not for this harassment, I planned to retire in 02/2016.   At that time I would have had my time in for insurance and 40 years of service.   Since it is the agency's fault that I can no longer work here, could you assist me in keeping my health insurance.   I am working with my doctor and Human Resources to get a waiver but my last day is coming soon.   I need it resolved.

Please help!

Sherril Artis TE/923

*Suite 500*

*805 Broadway*

*Vancouver, WA  98660*

(866) 605-8967 x20645

(360) 696-7944 fax



Retirement
Services

UNITED STATES OFFICE OF PERSONNEL MANAGEMENT
Washington, D.C. 20415

March 19, 2015

Sherril Artis
805 Broadway, Ste 500
Vancouver, WA  98660

Dear Ms. Artis:

This is in reply to your letter to the Office of Personnel Management (OPM) asking us to waive the
5-year participation requirement so that you may continue your enrollment in the Federal Employees
Health Benefits Program (FEHBP) as a retiree. We must have more information to determine whether
you are eligible for a waiver.

OPM, in its sole discretion, can approve a waiver of the participation requirement if we believe it would
be against equity and good conscience not to do so.  Evidence presented must demonstrate that you
intended to be enrolled in the FEHBP as an annuitant, that the circumstances preventing the completion
of the 5-year participation requirement are essentially outside of your control, and that you exercised due
diligence in protecting your right to enroll as an annuitant. Note that this decision can be made no sooner
than three months in advance of your retirement.

The attachment explains in full the information we require. Please use the enclosed envelope to return
the requested information. You may also fax the information to 202.606.1640.  If you have any
questions, you may contact me:  rosalyn.mattocks@opm.gov or 202.606.1932.

We look forward to serving you.

Sincerely,

Rosalyn J. Mattocks
Legal Administrative Specialist
Retirement Eligibility Services

Enclosure



**UNITED STATES OFFICE OF PERSONNEL MANAGEMENT**
Washington, D.C. 20415

Retirement
Services

June 26, 2015

Reference: CSA 8 757 264

Sherril A. Artis
1309 SE Park Crest Ave
Vancouver, WA 98683

Dear Ms. Artis:

This is in response to your request for a waiver of the 5-year participation requirement so that you can continue your enrollment in the Federal Employees Health Benefits Program (FEHBP) as a retiree.

Due to the exceptional circumstances surrounding your case, the Office of Personnel Management (OPM) has determined that it would be against equity and good conscience not to allow you to continue your enrollment in the FEHBP. Therefore, a waiver of the 5-year participation requirement is appropriate.

This waiver will allow you to continue your health benefits coverage in the FEHBP into retirement. Please be advised that this decision applies only to continue your health benefits enrollment, and not to any decision concerning your retirement eligibility. The premiums will be withheld from your monthly annuity payments.

We are pleased to have been of assistance in this matter.

Sincerely,

Rosalyn J. Mattocks
Legal Administrative Specialist
Retirement Eligibility Services

I was trying to save my job in the last months before I was forced to retire.

When the harassment became unbearable in 2013, I applied for a job as a PASS specialist. It was a lateral. I was more than qualified for the job. I tried to get Chris to assist me, but he told me that he had nothing to do with the selection. I asked who was the selecting official. He looked at me strangely and said Terry Temple. Chris knew that I had filed a previous EEO complaint against Terry. Chris an I both knew I would not be getting that job.

In December 2013, I considered writing up a job plan and presenting it to Regional Office so that I could work for the agency longer. I spoke with OIG agent, Shane Winder. I needed some relief from the constant belittling and hate from Chris and Amy.

I filed for a trial retirement. If it had been approved, I could have returned to work by 03/2016. Alan Heim denied my request, even though; I promised Alan and Chris that I would seek to return to work in the Dallas Region. This is the document that my attorney felt would have proven to the judge that I did not plan to retire in 2016. Why would I return to work in March 2016, when I had plan to retire in 02/2016?

I truly believed that if I was disabled it was due to the unchecked discrimination on the job. I filed for workmen's compensation on 02/20/2015. I was never contacted abut this claim and I think it is still pending in the system.

On March 9, 2015, I researched and copied the information on Reemployed annuitants. I wanted to work! It took so long for them to decide my case. Seven long years. At 63 should I have asked to return to work. I would have if it had been decided when I was 57, 58, or 59 or maybe 60.

## Artis, Sherril

| | |
|---|---|
| **From:** | Skaflestad, Sally |
| **Sent:** | Thursday, March 05, 2015 8:25 AM |
| **To:** | Artis, Sherril |
| **Subject:** | RE: Retirement |
| **Attachments:** | sf3107.pdf; SF2818.pdf; w4p.pdf; 04302015.pdf; 05012015.pdf |

Sherril,

You will need to complete the attached retirement application forms and mail them with a photocopy of your marriage certificate to the address shown below.

As a FERS employee, you may want to consider retiring April 30th rather than May 1st. If you retire April 30th, your annuity will be paid in June for the month of May. If you retire May 1st, your annuity will be paid in July for the month of June. However, April 30th is before the end of the pay period, so you would not accrue annual or sick leave in pay period 10.

I attached calculations for April 30th and May 1st.

For assistance with completion of the FEGLI form SF-2818, you may use the FEGLI calculator here http://www.opm.gov/retirement-services/calculators/fegli-calculator/.

Sally Skaflestad
Human Resources Specialist
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 292B
Seattle, WA 98104-7075
Phone: (206) 615-2664

---

**From:** Artis, Sherril
**Sent:** Wednesday, March 04, 2015 4:46 PM
**To:** Skaflestad, Sally
**Subject:** RE: Retirement

May 1, 2015

---

**From:** Skaflestad, Sally
**Sent:** Wednesday, March 04, 2015 1:49 PM
**To:** Artis, Sherril
**Subject:** RE: Retirement

What date is your anticipated retirement? We need a date for the calculation.

Sally Skaflestad
Human Resources Specialist
(206) 615-2664

---

**From:** Artis, Sherril
**Sent:** Wednesday, March 04, 2015 1:45 PM
**To:** Skaflestad, Sally
**Subject:** RE: Retirement

Sally,

I need an estimated amount of my retirement benefits and I need to know where to access the application for Federal Employees benefits.

Sherril

---

**From:** Skaflestad, Sally
**Sent:** Tuesday, March 03, 2015 1:55 PM
**To:** Artis, Sherril
**Subject:** RE: Retirement

Sherril,

Because the Trial Retirement Program is a written agreement between the employee and the manager, it would depend on whether or not the Arkansas office would consider your agreement with the former office.

An OPM-approved FEHB waiver should not be affected by Trial Retirement.

Sally Skaflestad
Human Resources Specialist
(206) 615-2664

---

**From:** Artis, Sherril
**Sent:** Monday, March 02, 2015 10:06 AM
**To:** Skaflestad, Sally
**Subject:** Retirement

Sally,

I am preparing to make some final decisions on my retirement.   I will be writing to get a waiver on my health insurance.   I will not have fulfilled the 5 year requirement until 12/31/15. I am looking at the trial retirement. If I decided to come back within a year, am I required to return to the same office that I retired from?   My plan is to relocate to Arkansas.  Does the waiver on the health insurance affect the trial retirement? I am pretty excited about the options that I have with retirement.


**Sherril Artis TE/923**
*Suite 500*
*805 Broadway*
*Vancouver, WA  98660*
(866) 605-8967 x20645
(360) 696-7944 fax

Skip to Central Content



**THE OFFICE OF PERSONNEL**
*Branching out to meet your needs*

*Financial Literacy & Education*

# *Re-Employed Annuitants*

Reemployed annuitants are individuals who originally retired under CSRS or FERS and have returned to Federal service.

Reemployed annuitants serve at the will of the appointing officer and may be separated at any time at the discretion of the appointing officer regardless of the type of appointment they hold.

Reemployed annuitants continue to receive their full annuity. Their salary will be reduced or offset by the amount of their annuity. Reemployed annuitant status has no effect on an employee's right to elect FERS. It does not create, or extinguish, an existing right. A CSRS or CSRS-Offset reemployed annuitant may transfer to FERS if he/she is reemployed after a break in service of more than 3 days and is reemployed in an appointment not excluded from FERS coverage.

## Treatment of Pay for CSRS annuitants upon reemployment:

1. Pay received during a reemployment period is offset by the amount of the annuity.
2. CSRS retirement deductions are optional and, if elected, are withheld as a percentage of full salary before the offset.
3. Social Security deductions are not withheld, even if the appointment is temporary.

## Treatment of Pay for CSRS Offset annuitants upon reemployment:

1. Pay received during a reemployment period is offset by the amount of the annuity.
2. CSRS retirement deductions are optional, and if elected, are withheld as a percentage of full salary before the offset.
3. Social Security deductions are withheld from the amount of salary after the offset for the annuity payable.

## Treatment of Pay for FERS annuitants upon reemployment:

1. Pay received during a reemployment period is offset by the amount of the annuity.
2. FERS retirement deductions are mandatory and are withheld based on the amount of salary before the offset for the annuity.
3. Social Security deductions are withheld from the amount of salary after the offset for the annuity payable.



3/9/2015

2/11/2021

ECOMP - U.S. Department of Labor

*Filed for workman's comp due to the ongoing harrassment* (handwritten)

## OSHA's Form 301
# Injury and Illness Incident Report

Attention: This form contains information relating to employee health and must be used in a manner that protects the confidentiality of employees to the extent possible while the information is being used for occupational safety and health purposes.



U.S. Department of Labor
Occupational Safety and Health Administration

This *Injury and Illness Incident Report* is one of the first forms you must fill out when a recordable work-related injury or illness has occurred. Together with the accompanying *Log of Work-Related Injuries and Illnesses* and the accompanying *Summary*, these forms help the employer and OSHA develop a picture of the extent and severity of work-related incidents.

Within 7 calendar days after you receive information that a recordable work-related injury or illness has occurred, you must fill out this form or an equivalent. Some state workers' compensation, insurance, or other reports may be acceptable substitutes. To be considered an equivalent form, any substitute must contain all the information asked for on this form.

According to Public Law 91-596 and 29 CFR 1904, OSHA's recordkeeping rule, you must keep this form on file for 5 years following the year to which it pertains.

If you need additional copies of this form, you may photocopy and use as many as you need.

Completed by _Odille Is_

Title _OSHA Request Report_

Phone ( ___ ) ___ - ____

### Information about the employee

1) Full name _Shonil              A              Ann_

2) Street _1305 SE Park Crest Ave_

   City _Vancouver_      State _WA_   ZIP _98683_

3) Date of birth _05/08/1985_

4) Date hired _02/11/1979_

5) ☐ Male   ☑ Female

### Information about the physician or other health care professional

6) Name of physician or other health care professional (First, Middle, Last)
   _Jena                  Maryam_

7) If treatment was given away from the worksite, where was it given?

   Facility _____
   Street _2525 NE 139th ST_
   City _Vancouver_   State _WA_   ZIP Zip ____

8) Was employee treated in an emergency room?
   ☐ Yes   ☑ No

9) Was employee hospitalized overnight as an in-patient?
   ☐ Yes   ☑ No

### Information about the case

10) Case number from the Log ____

11) Date of injury or illness _01/20/2015_

12) Time employee began work ____ ☑ AM ☐ PM

13) Time of event _08:25_   ☐ AM   ☑ PM   ☐ Check if time cannot be determined

14) What was the employee doing just before the incident occurred?
    _I was working at my desk_

15) What happened? Tell us how the injury occurred.
    _The inspector came to me and asked to talk to me in the private interview room. He gave me a reprimand and refused to let me see it. I have received by the agency for almost a year and I have never been reprimanded._

16) What was the injury or illness? Tell us the part of the body that was affected.
    _I have been harrassed by the agency since 2014 and longer. Past game street street was 01/20[...] I didn't do anything wrong for this reason. In the past just [...] to be kept out of the retaliation of this form._

17) What object or substance directly harmed the employee?
    _Just management's behavior_

ECOMP - U.S. Department of Labor

 ECOMP

HOME / CLAIM REVIEW

Return to the list page

Agency:     1750-47 - SOCIAL SECURITY ADMINISTRAT...   Name:   Sherril A Artis

DOB:       05/06/1958                                        of

CASE STATUS

| | ECN 1710492 | OSHA 301 | |
|---|---|---|---|
| | Employee      Sherri Artis | 02/20/2015 | |
| | Organization  1750-47 SOCIAL | 03/23/2015 | |
| | US ... ADMINISTRATION... | | |
| | ... with this form. | ... | |

©U.S. DEPARTMENT OF LABOR. ALL RIGHTS RESERVED. PRIVACY POLICY



# SOCIAL SECURITY

March 18, 2015

Ms. Sherril A. Artis
Social Security Administration
805 Broadway St, Suite 500
Vancouver, WA 98660

Dear Ms. Artis:

I am writing in regard to your request for Trial Retirement from the Social Security Administration. Based upon our current resource allocations in Area 2 and the uncertain budget, I am not in a position to approve your request. In addition to the staffing situation, I considered other factors such as workloads that are expected in the coming year.

If you choose to retire, this denial of Trial Retirement does not preclude you from seeking employment with SSA or another agency within the Federal Government in the future. Regardless of how you retire you may still be considered for reemployment as an annuitant.

If you have any questions regarding reemployment, you can contact Darla Anderson, Benefits and Employment Services Team Leader at 206-615-2019. If you have any questions concerning benefits as a reemployed annuitant you can contact Sally Skaflestad, Human Resources Specialist at 206-615-2664.

Sincerely,

Alan Heim
Deputy Regional Commissioner
Seattle Region

The judge did not address the retaliation that I was experiencing in the Vancouver office. Even Chris demanding that I retire before he would sign off on the grievance was retaliation. I asked that retaliation be part of my EEO complaint over and over again. Chris and Amy stood in the way of any promotions, reasonable accommodations, or training request. I had been in management and had not taken or processed disability cases in several years. Amy told me that I should just know how to do the work.

# Retaliation

**Artis, Sherril**

| | |
|---|---|
| **From:** | ROBERT FONTEK <robertfontek@yahoo.com> |
| **Sent:** | Monday, February 23, 2015 11:46 AM |
| **To:** | Artis, Sherril |
| **Subject:** | Re: Revised EEO Summary - Quick Question about the date listed (5/14/14) |
| **Attachments:** | ARTIS 22315 SUPP AF.doc; ARTIS CertificationPage-generic.doc |

Dear Ms. Artis,

No problem.

Attached is a Supplemental Affidavit and Certification Form. Please return it with the original Affidavit you received.

Thank you,

Robert Fontek
Contract EEO Investigator
P.O. Box 1979
Boothwyn PA 19061-7979

Phone: 610-800-0354
FAX: 610-497-3587
Email: RobertFontek@yahoo.com

This email and any files transmitted with it are confidential and are intended solely for the use of the individual or entity to whom they are addressed. If you are not the intended recipient or the person responsible for delivering the email to the intended recipient, please be advised that you have received this electronic mail in error and that any use, dissemination, forwarding, printing, or copying of this electronic mail is strictly prohibited. If you have received this in error, please immediately notify the sender by return email at robertfontek@yahoo.com, or by telephone at 610-800-0354.

On Feb 23, 2015, at 1:55 PM, Artis, Sherril wrote:

This is the email that I sent requesting that retaliation be included.  The retaliation also stems from a prior EEO complaint that I filed in 2009.  Amy Throop was in the district where I was at the time that the complaint was filed.  Since she came to this office, the harassment and discrimination has escalated.

1

**Artis, Sherril**

| | |
|---|---|
| **From:** | ROBERT FONTEK <robertfontek@yahoo.com> |
| **Sent:** | Monday, February 23, 2015 10:00 AM |
| **To:** | Artis, Sherril |
| **Cc:** | Weich, Ivan |
| **Subject:** | Re: #SEA-01-0434-SSA Retaliation |

Dear Ms. Artis,


You claim of retaliation was not included in the January 14, 2015 Acceptance Letter from your Agency. If you want me to include retaliation in my investigation please advise and I will email the retaliation questions to you in a Supplemental Affidavit.


Thank you,


Robert Fontek
Contract EEO Investigator
P.O. Box 1979
Boothwyn PA 19061-7979

Phone: 610-800-0354
FAX: 610-497-3587
Email: RobertFontek@yahoo.com


This email and any files transmitted with it are confidential and are intended solely for the use of the individual or entity to whom they are addressed. If you are not the intended recipient or the person responsible for delivering the email to the intended recipient, please be advised that you have received this electronic mail in error and that any use, dissemination, forwarding, printing, or copying of this electronic mail is strictly prohibited. If you have received this in error, please immediately notify the sender by return email at robertfontek@yahoo.com, or by telephone at 610-800-0354.


On Feb 23, 2015, at 12:49 PM, Artis, Sherril wrote:

Mr. Fontek,

Thank you for your email and the update. I can definitely add an additional claim of discrimination to your open case (SEA-14-0434-SSA). Please provide me with the following for the new claim of discrimination:

- Date (when the discriminatory event occurred)
- Name of the person who committed the act of discrimination
- What act of discrimination was committed against you
- Where the discriminatory act occurred
- Protected class/basis named (if different from the other claims listed in the summary).

Feel free to call me at 206-615-2659 if you have any questions about this email.

Respectfully,

Melissa Bates
Equal Employment Opportunity Specialist
Social Security Administration
Seattle Region Civil Rights & Equal Opportunity Team
Tel (206) 615-2659 | Fax (206) 615-2770

**Confidential/Privacy Notice:** The information contained in this email and any attachments may be legally privileged and confidential. If you are not the intended recipient, you are hereby notified that any dissemination, distribution, and copying of this email is strictly prohibited. If you receive this email in error, please notify the sender and permanently delete this email and any attachments immediately. You should not retain, copy, or use this email or any attachments for any purpose nor disclose all or any part of the contents to any other person.

---

**From:** Artis, Sherril
**Sent:** Saturday, May 10, 2014 7:39 AM
**To:** Bates, Melissa CREO
**Subject:** RE: Revised EEO Summary - Thank you
**Sensitivity:** Confidential

Melissa,

I want to file a separate EEO complaint for retaliation. This time I want to name Chris Detzler and Amy Throop. I will write it up over the weekend and send it to you on Monday.

Sherril

---

**From:** Bates, Melissa CREO
**Sent:** Thursday, May 08, 2014 4:24 PM
**To:** Artis, Sherril
**Subject:** RE: Revised EEO Summary - Thank you
**Sensitivity:** Confidential

Sherril,

Attached are emails sent to Alan Heim, Assistant Regional Commissioner of the Seattle Region. Alan had once thought enough of me to offer me the management position in Longview Washington. I was appalled by Alan's approach to the harassment. I asked him for a temporary position so I could be from under the stress created by the harassment. I told him that I would drop the EEO case, if he would just make them stop.

I was receiving the best medical treatment possible for my medical conditions, but the illegal stress brought on by the years of harassment was taking its toll. I could not control my blood sugars and the sarcoidosis could not got into remission with that type of stress. Panic attacks that I never had before, losing control of my bladder—while Amy was demanding that I get permission to go to the bathroom

Alan told me that he would refer me to Gail Leon. I am not sure who she was or what her position was. She never contacted me. The next time that I heard her name, she was retiring.

Social Security failed me time and time again.

# Alan Heim emails

## Artis, Sherril

| | |
|---|---|
| **From:** | Heim, Alan |
| **Sent:** | Wednesday, January 15, 2014 11:35 AM |
| **To:** | Artis, Sherril |
| **Subject:** | RE: I need to speak with you |

My thoughts will be with you Sherril and when asked will do all I can to help.  Alan

---

**From:** Artis, Sherril
**Sent:** Wednesday, January 15, 2014 11:16 AM
**To:** Heim, Alan
**Subject:** RE: I need to speak with you


Thanks so much, Alan.  I knew that you would work through the proper channels.

Sherril

---

**From:** Heim, Alan
**Sent:** Wednesday, January 15, 2014 10:52 AM
**To:** Artis, Sherril
**Subject:** RE: I need to speak with you


Hi Sherril, I'm so sorry that you are having such medical difficulties.  I hope you are
able to get better and have the steroids reduced or removed soon.  I spoke to the DRC
regarding your situation and since the AD is visiting Vancouver she is going to ask him
to speak to you.  I hope that is okay with you because before I can do anything I have to
run it by them first.  Please let me know if you have any further questions or reactions
to the conversation with the AD.  Alan

---

**From:** Artis, Sherril
**Sent:** Tuesday, January 14, 2014 5:09 PM
**To:** Heim, Alan
**Subject:** I need to speak with you


Alan,

I would like to speak with you about a virtual JEP or some work assignment that will help me to get through a
transitional phase with my health.  I was diagnosed with a lung disease a few months back and the medication and
other health conditions are making hard for me to deal with the work related stress.  I am on prednisone which is a
steroid with tons of side effects.  I spoke with the manager here and he is aware that I am looking for options to help
me through until the steroids are reduced or removed.  I have some ideas about what I could work on to help out the
area.  I just need something that is more focused, self-directed, and self-controlled.  I do not have my JEP papers in but I
can do that very quickly.

Would you be willing to at least give me some direction?  I know that you a busy man but you have always been fair and
square with me.

1

**Artis, Sherril**

| | |
|---|---|
| **From:** | Artis, Sherril |
| **Sent:** | Tuesday, July 01, 2014 3:14 PM |
| **To:** | Heim, Alan |
| **Cc:** | Hughes, Stephen |
| **Subject:** | Help! |

Alan,

I am being harassed by management in this office to the point that it has totally stressed me out. Please help! The manager, Chris Detzler, called me in his office on 05/15/14 and called me rude, disrespectful and a liar. It was so loud that it frightened many of the employees in this office. We now have a white noise machine so that others cannot hear when someone is being belittled and intimidated. I need this to stop. I am so paranoid that it is hard to come to work. I had a misuse file on my desk that showed where management was negligent with the processing of the case. The T2 TE and I told management that we were not following the proper protocol. The file is now missing from my desk. Amy is forcing us to compromise the integrity of the work. One of my clients called in and was told that "You are dealing with Sherril Artis and she does not know what she is talking about". The other day there was a service complaint from a client that called in on my phone day. There is no way that I would be rude to a customer. Amy Throop was on phones when both of these incidents occurred. Could someone call security to see who accessed these records? Amy has made an offhand remark about my leaving or retiring. That is just unfair and against the law; I should be able to leave when I like and not be harassed until I do. She has yelled at me on the floor and in her office where other employees have overheard. Chris is absolutely no help. I try to avoid management as much as possible because of the bullying, harassment, intimidation, and discrimination. When I contacted you earlier in the year, it was because Amy was harassing me about being sick. She even wrote in my appraisal that if I call in sick or on emergency leave, then no one would be available to help with my work. They assign the harder work to me and get upset when other things are not done. Lord knows that I have never been afraid of hard work. During my time of illness with the lung issues, from about 09/2013 through 02/2014 I did fall behind. I am now in remission and things could go quite well if I was under management team that trusted me respected the quality of my work.

I have absolutely nothing to lose. I have filed an EEO complaint and I am trying to hold tight until the mediation date. When the agency cannot protect employees from harassment and discrimination, it is just time to not be here any longer. Amy called me a liar about everything that she had said to me. I spoke with employees from her prior office, both retired and still working. The ones that retired all said it was due to her hatefulness and not simply because they were ready to leave. One is still working because she could not afford to leave and one transferred to the Burien office. She did the same things to these older women that she is doing to me. I have all of their names and phone numbers, if you would like to contact them. It is so sad. I have never been so embarrassed until the day that she yelled at me— "You get back in here. I am not finished with you yet, you cannot walk out on management. I was having a panic attack and I told her that I was feeling sick and needed to leave. The first panic attack, due to her harassment, I did run from her office without telling her that I was sick. I had never had a panic attack before and did not realize what was happening. Chris is so brass that he accused me of wanting Teri Simmons to supervise me because she has "Black" people in her family. He also said that he knows Leslie McAuley and Rose Bradford and they don't talk like me. All black people do not have to talk the same. I was simply appalled that he would say something like this. I could not believe my ears.

Alan, if you can find a way to help me and stop this nonsense that management has going, I am willing to drop the EEO stuff. I don't have the energy for EEO, harassment, bullying, or embarrassment. I do need someone to hear my story. I would never intentionally be dishonest about Chris or Amy. They are the future of this place, but they must learn to how to treat others even if they think that one might not be what they want. We had an employee quit last week, another is transferring to another region, and there are others who prefer to be somewhere else. Many are afraid that they will receive the same mistreatment that they have witnessed me receiving.

I don't want to go through EEO and win a battle just to lose the fight.   This is a teachable moment, especially for Chris. He is a smart young man and has a ton of potential.   I really appreciate his loyalty in siding with Amy but Amy is so wrong.   Amy needs a lot more training than Chris and it is Chris' job to help her and not allow her to bully the staff.

I trust you Alan. You stood by me when I requested to downgrade and for that I am eternally grateful.   There has been a many day that I wished that I had listened.   Thank you for believing in me.   The employees here and at Portland East love me.   I am so blessed to have friends that keep me up.   I am just not sure what Chris is after.   I have told him that I have absolutely no interest in management.   I just want to do my work, help technically with others, and go home.   I tried to work with Chris on eliminating this EEO business but he just told me that they are not going to do anything for me. He said that anything that I get must come through him.   He is pretty self-assured but he must use it in a way that makes a positive difference.

**Sherril Artis TE/923**
*Suite 500*
*805 Broadway*
*Vancouver, WA  98660*
 (866) 605-8967 x20645
(360) 696-7944 fax

## Artis, Sherril

| | |
|---|---|
| **To:** | Heim, Alan |
| **Cc:** | Hughes, Stephen; Detzler, Christopher |
| **Subject:** | RE: I need help as soon as possible |

I will call you. Give me about 5 minutes.

---

**From:** Heim, Alan
**Sent:** Wednesday, July 02, 2014 11:14 AM
**To:** Artis, Sherril
**Cc:** Hughes, Stephen; Detzler, Christopher
**Subject:** RE: I need help as soon as possible

What number would you like us to call you on?  And, can we call you now or you can call
me at 206-615-3604?

---

**From:** Artis, Sherril
**Sent:** Wednesday, July 02, 2014 11:12 AM
**To:** Heim, Alan
**Cc:** Hughes, Stephen; Detzler, Christopher
**Subject:** RE: I need help as soon as possible

Please do, Alan.  I am so distraught.  I am not sure why Chris is taking this approach with me.  Thanks.

**Sherril Artis TE/923**
*Suite 500*
*805 Broadway*
*Vancouver, WA  98660*
(866) 605-8967 x20645
(360) 696-7944 fax

---

**From:** Heim, Alan
**Sent:** Wednesday, July 02, 2014 11:08 AM
**To:** Artis, Sherril
**Cc:** Hughes, Stephen; Detzler, Christopher
**Subject:** RE: I need help as soon as possible

Sherril, I am really concerned about your health right now.  Can Steve (AD) and I give
you a call so that we can discuss your current distress and perhaps outline conversations
between you, Steve, and Chris to move forward on?

Alan

---

**From:** Artis, Sherril
**Sent:** Wednesday, July 02, 2014 9:54 AM
**To:** Heim, Alan

1

**Cc:** Hughes, Stephen; Detzler, Christopher
**Subject:** I need help as soon as possible

Chris called me in his office today and told me that I told him on 04/28/14 that I don't get along with Amy because she is white.   Not only is that a stupid racist thing to say but I am not that dumb.   I have not had a nonwhite supervisor since 1980, this is a strange time to decide that I don't like white people.   He also said that I told him that I wanted Teri to be my supervisor because she has black people in her family.   Chris is one of the most racially unconscious people that I know.   I assumed that there were blacks in Teri's family but that is nothing that I would say and especially not to Chris.   I would not demean Teri that way.   Teri is smart, humorous, knows her stuff, and has worked with a lot of people from East coast to West.   She is a tough lady and she tells it like it is,  unlike Chris who likes to manipulate the truth.

This is stressing me to the limit.   I am so jittery that I feel like I need to file for workmen comp.   Please do something soon or I am going to have a stroke or a heart attack.   I am so upset with Chris that I cannot think.   Please help!!

This email was not sent to Alan But has some very important information in it. It was prepared between 7/1/14 and 7/8/14

**Artis, Sherril**

**Subject:** Please Help!

Alan,

I am the same Sherril Artis that you knew before. Same strengths and weaknesses but never dishonest. My upbringing and my influences taught me better.

I am having the hardest time in this office. If it was not affecting my health and wellbeing, I have tried to deal with the local manager but he has told me that I am a liar, rude, disrespectful, and don't communicate. I am so embarrassed and ashamed that I am fearful that they are trying to fire me. I filed an EEO complaint and I want you to know this because I would not want you to venture into unknown territory.

I want you to see how petty this situation has gotten. My husband turns 60 in August and our 28th anniversary is in August. My children are having a party for us on 08/30/14 in Arkansas. I put in for leave for August, trying to guess when the party would be. Well, I guessed wrong. I took off the two weeks prior to the party. I gave Amy Throop, a leave slip and told her my story. She said that I have to be back at work on 08/29, which is the day before the party. I am so ashamed to tell my children that I cannot make the one and only party that they are hosting for their parents.

I believe that Amy is deliberately sabatoging things for me. Last week, 06/11/14,one of my clients called in and was told that I don't know what I am doing and that I don't know what I am talking about. The poor lady was so distraught that she called me and told me that one of my coworkers don't like me. Management answers the phones on Wednesday and Amy was on phones that day. I suggested to Amy that we contact security to see who accessed this lady's record. Then on 06/17/14, which is my phone day, another customer said that he had called in and someone was so rude to him. Alan, I swear that I would quit this job before is displayed rudeness to any of our customers. The second guy, I did access his record and change his address, this is just now how I conduct business. I am afraid that they are trying to fire me or prove that I am incompetent. The social security numbers for these two people are 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 and 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.

I have spoken with several employees that work in The Dalles office, where Amy managed before. Hopefully you are aware that many of these employees quit or requested transfers. I have spoken to five of these employees and I was appalled by the abuse that they took from Amy. Yelling at them, treating them like children, forcing cases to be cleared without proper documentation. These are the exact things that she has done to me. Amy and Chris yelled at me on 05/15/14 to the point that it frightened the entire staff. We now have a white noise machine to keep their bad behavior from being overheard outside of their office. I wish they had done this before 05/15/14 because now I feel like a freak. The staff member from the Dalles that I spoke with are Suzanne Kleeskens, Vandee Mauser, Roberta Schweller, Debbie Sanguras, and Wanda Andrillon. I can speak with them and find out if it is okay for me to share their contact information.

Amy has been so brass with me that she has told me that I need to just do the work until I leave or retire. That was the last that I was going to take of her. She constantly tells me that times have changed as though I am too old to know what is going on. She also tell me that good work that I produce is expected because of my time and experience. She makes me feel so old! There is something very wrong going on and it is not just unfair to me but for the agency. I am getting paranoid and it is literally making me sick. I have had two panic attacks while trying to have a conversation with her. She is vicious! The sad thing is that Chris believes her. Even with compromised work integrity issues that she has forced on us. I have asked that he supervise me or let me be supervised by someone else. I have even offered to downgrade to a CR so that I could have another supervisor. This situation has been out of control since last fall. I sent you an email in January asking if you could assist me in getting something else to do. I will work on the leave situation through the union but I need immediate assistance from somewhere on this harassment and intimidation.

My EEO mediation is scheduled for 07/08/14. I don't want to take off until then but I have no leave. Don't take my word for this fiasco. Please have someone to contact the prior Dalles employees, use security to investigate those disgruntled customers, read my appraisal about if I call in sick, or speak with some of the employees here in this office.

I should get a waiver on my health insurance and just retire. I didn't want Amy to force me out. I believe that if we don't resolve this it will just become a problem for someone else. If this had been taken care of in the Dalles, then it would not be a problem in the Vancouver office or for myself.

Sherril Artis

## Artis, Sherril

**From:** Artis, Sherril
**Sent:** Wednesday, December 11, 2013 11:51 AM
**To:** Winder, Shane
**Subject:** Information on closed fraud case

Shane,

I am attempting to write up a job enhancement where I am allowed to work on the development of fraud cases from our FITS system.   Maybe for the Vancouver and Portland area.   I am in no big hurry but I would like to get some information from you.   I was involved with the fraud case of the doctor from Kaiser who married my SSI claimant.   Do you remember this case?  I kept the information and the newspaper article for some time but have since disposed of it. Do you happen to have anything that I can refer to on this case?  I am making my request to Regional Office.

It may not work out for me but it is definitely not going to work out if I do not ask.

**Sherril Artis TE/923**
*Suite 500*
*805 Broadway*
*Vancouver, WA  98660*
 (866) 605-8967 x20645
(360) 696-7944 fax



1

2/23/.02.   (3,355 unread) - sherril.artis2015@yahoo.com - Yahoo Mail

## FW: Retirement of Senior Executive in the Seattle Region - UPDATE

From:  Artis, Sherril (sherril.artis@ssa.gov)

To:    sherril.artis2015@yahoo.com

Date:  Monday, March 16, 2015, 06:35 PM CDT

---

**From:** Heim, Alan
**Sent:** Wednesday, December 04, 2013 11:41 AM
**To:** Artis, Sherril
**Subject:** RE: Retirement of Senior Executive in the Seattle Region - UPDATE

That's the best reason for me to stick around a little longer Sherril.   Any time you
need me, I'll be there.   Alan

---

**From:** Artis, Sherril
**Sent:** Wednesday, December 04, 2013 11:14 AM
**To:** Heim, Alan
**Subject:** FW: Retirement of Senior Executive in the Seattle Region - UPDATE

I know that you really doing this for me. You knew that I needed the security of knowing that you were still in the fox hole with
me.

Sherril

---

**From:** |WA FO Vancouver
**Sent:** Wednesday, December 04, 2013 11:11 AM
**To:** #SE WA 923 All
**Subject:** FW: Retirement of Senior Executive in the Seattle Region - UPDATE

---

**From:** ||SEA ORC
**Sent:** Wednesday, December 04, 2013 8:28 AM
**To:** #SE Regionwide Vacancy and Selection Announcements
**Cc:** #DCO Exec RCs Personal Bxs; #DCO ARC MOS; Toney, Rubie; DeLaittre, David J.; Morado, David; Velling, Joseph;
#DCO Exec Front Office
**Subject:** Retirement of Senior Executive in the Seattle Region - UPDATE

All Seattle Region Employees,

I am very pleased to announce that Alan Heim, Seattle's ARCMOS, has agreed to my request to
delay his retirement until June 30, 2014. Alan's planned January 3 departure would have come at an
especially critical juncture because of several other retirements in key positions that are happening at
the same time. These retirements, along with other staffing losses in Regional Office components,
have made it plain that Regional Offices have to develop new ways to provide services more

(3,355 unread) - sherril.artis2015@yahoo.com - Yahoo Mail

efficiently in the future.  As we work towards developing these new models of providing service, I feel that Alan's experience and leadership is vitally important to get us through the next several months.

While he was anxious to begin traveling and engaging in a more leisurely lifestyle, Alan also did not want to leave his post at a time of such transition.  I have known Alan for many years and have always appreciated his sense of dedication and service.  Please join me in welcoming him for an extended stay.

Stanley

This is the grievance that Chris used to force my retirement. He told me and the Union Rep that he would not sign off on this grievance until after I retired. I wanted to come back as a rehired annuitant to a Social Security office in the Dallas Region. A grievance for insubordination would not show favorably for me in a new region. I changed my original retirement date from May 1, 2015, to March 31/2015. I was praying that someone from EEO or Social Security management would help me to save my job.

I had never been reprimanded in my 39-year career. I could not fight with Chris Detzler any longer. H had defamed my name and character by telling the Regional Office that I was racist and insubordinate. Why was my insubordination and racism not in my personnel folder? Because it was not true. Chris Detzler should be removed from the agency due to his hatefulness toward minority women.

Chris Detzler forced my retirement! I would never retire freely 9 months before I could get health insurance or before I secured my 40 years of service. It just would not make sense. I had to go 6 months without health insurance coverage. I had to pay out of pocket. If I planned to retire, then I would have at least waited. I always believed that I would work until I was 62 years of age and have the option of working for 3 additional years as a rehired annuitant.

# Greivance and forced retirement  Chris Detzler



## SOCIAL SECURITY

Vancouver Field Office
805 Broadway Street, Suite 500
Vancouver, WA 98660

Date:        February 20, 2015

To:          Sherril Artis, Technical Expert

From:        Chul Shirts, Operations Supervisor

Subject:     Letter of Reprimand

This is notice that I am reprimanding you effective with the date of this memorandum for failing to treat a coworker, Operations Supervisor Teri Simmons, with courtesy and consideration during a conversation on February 12, 2015.

### Background

On February 11, 2015, you emailed Ms. Simmons about feedback reports received in the office, and she replied to your email indicating management would consider your recommendation about the reports. On February 12, 2015, I was at Ms. Simmons' cubicle when you approached and asked to talk to her in private. Ms. Simmons advised you that if it was about the emails she did not wish to discuss that issue with you anymore.

Despite this, you continued to try to discuss the email with her. You stood up and began speaking to Ms. Simmons in a raised voice that was loud enough for other employees in the surrounding cubicles to hear, and you began commenting on Ms. Simmons interactions with other employees. She asked you to leave her cubicle numerous times, but, initially, you did not oblige her request. Ms. Simmons then ordered you to leave her cubicle, which you did. When you were several feet away from her cubicle, you turned and talked loudly in her direction, saying that you were going to talk to me about this.

### Discussion

You and I have discussed the importance of treating others respectfully and you have had similar conversations with other members of management. The Social Security Administration (SSA) requires all employees to treat their co-workers with courtesy and consideration while they are on

Artis Reprimand
Page 1 of 3

duty. Employees must deal with each other in a professional manner and with courtesy, dignity, and respect. These expectations are reflected in various policies and rules, including Section 1.6 of the Annual Personnel Reminders and Article 3 of the 2012 SSA/AFGE National Agreement (the Contract).

Your behavior towards Ms. Simmons did not demonstrate the courtesy and consideration you must show your coworkers. Also, I do not think it reflects the professionalism I know you strive for. Even though you were frustrated by the situation, it was not appropriate for you to raise your voice to Ms. Simmons and to disregard her request for you to leave her cubicle. Additionally, it was not appropriate for you to shout in her direction after you had walked away, disrupting your coworkers in that part of the office.

### Decision

For the reasons specified above, I have decided to reprimand you to change your behavior going forward and to promote the efficiency of the service we provide.

In the future, when you find yourself in a situation where you feel frustrated or you feel like you have lost your patience with someone else, come and talk to me. It does not matter if you are dealing with a workload issue, a challenging customer, or an interpersonal issue with a coworker. Do not risk losing your temper by continuing the conversation with the person with whom you are frustrated. This is important because further misconduct on your part may result in a more severe disciplinary action – up to, and including, removal from your position.

### Notice of Rights

If you disagree with this official reprimand, you have the right to file a written grievance through the negotiated grievance process in accordance with Article 24 of the Contract. You must file the grievance no later than fifteen (15) working days of the date you receive this official reprimand. You have a right to union representation. You may contact your local union representative if you have questions about how to file a grievance.

If you believe that your reprimand was based on discrimination, you have the right to file an EEO complaint. To do so, you must contact an EEO counselor within forty-five (45) days of the effective date of this action. You may contact the Civil Rights and Equal Opportunity staff at:

<div align="center">

Social Security Administration
Office of the Regional Commissioner
Civil Rights and Equal Opportunity
701 Fifth Avenue, Suite 2900 M/S 291A
Seattle, WA 98104-7075
(206) 615-2679

</div>

<div align="right">

Artis Reprimand
Page 2 of 3

</div>

You have the option of filing a grievance under the negotiated grievance procedure or a formal complaint of discrimination with the Agency, but not both.

If you think it would be beneficial to you, free counseling services are available through the Employee Assistance Program (EAP), a service provided for employees who are experiencing personal or work-related problems. All EAP counseling sessions are confidential and assessment is free. You can contact EAP 24 hours a day, seven days per week by calling 1-800-869-0276.

A copy of this reprimand will be placed in your electronic Official Personnel Folder (eOPF) and your SSA-7B extension file for up to 1 year. Your reprimand is effective on the date you receive this letter.

Chul Shirts
Operations Supervisor

I acknowledge receipt of this document; my signature does not signify agreement, merely acknowledgement of receipt.

Employee refused to sign /                    2½0/15
_____      _____
(Signature)                             (Date)

cc:     SSA 7B Extension File
        eOPF

Artis Reprimand
Page 3 of 3

# STANDARD GRIEVANCE FORM

USE ADDITIONAL PAGES FOR ANY SECTION OF THIS FORM, IF NECESSARY

| NAME OF EMPLOYEE<br>Sherril Artis | | OFFICE TELEPHONE<br>866-605-8967 x20645 |
|---|---|---|
| OFFICE LOCATION<br>DO 923 Vancouver WA | POSITION<br>SSI TE | GRADE<br>GS-12 |
| REPRESENTED BY<br>☐ SELF<br>XX UNION | REPRESENTATIVE NAME<br>Laura Novakoski | REP TELEPHONE<br>888-683-4303 X10252 |

**DESCRIPTION OF GRIEVANCE. WHAT ARTICLE(S) OF THE AGREEMENT ARE INVOLVED?**

I would like to enter this grievance at Step 2, with District Manager Chris Detzler. I don't believe that a Supervisor has the authority to grant me the relief I have requested, shown below.

On 02/20/2015, I received a letter of reprimand from Supervisor Chui Shirts. The substance of this reprimand involved a conversation I had with Supervisor Teri Simmons on 02/12/2015. I feel that Ms. Simmons' conduct and behavior escalated what should have been a routine workload discussion, and I am unfairly being blamed for it. The articles of the National Agreement that were violated are:

## Article 3, Section 1 Employee Rights / Right to Unionism

Each employee shall have the right to join or assist the Union, or to refrain from such activity, freely and without fear of penalty or reprisal, and each employee shall be protected in the exercise of such right.

This office seems to have a problem retaining an on-site Union rep, and I believe this is due to management animosity and a conscious pattern of increased harassment and pressure on those employees who have volunteered to fill this position. Miguel Ramos stepped down after only 4 months, and I have already notified AFGE that I, too, must step away from the position. Prior to serving as the alternate rep, I did not experience this type of negative attention from my supervisor or other members of management. Teri's comments and demeanor during our conversation make it clear that she jumped to the unlikely conclusion I might be there in my Union capacity, and that she felt threatened by that. What should have been a professional, routine work related conversation went downhill from the point when she asked me if I was there in my Union capacity.

## Article 3, Section 2 Employee Rights / Personal Rights

The parties agree that in the interest of maintaining a congenial work environment, Agency employees will deal with each other in a professional manner and with courtesy, dignity, and respect. To that end, all Social Security employees should refrain from coercive, intimidating, loud or abusive behavior. The parties further agree that bullying is prohibited in the workplace and will not be tolerated.

I will cite the same article that was listed in the reprimand letter, and turn it back on Teri. I believe that it is a basic supervisory skill to show patience and active listening when engaging with your staff, even if she may have felt frustrated. It is even fair to say that my interest in and pursuit of the subject

matter (overpayment waiver procedures, manual notices and ensuring staff knowledge and consistency) could have been perceived as both a productive use of my time and exemplary level TE performance. Although it falls outside the bounds of this grievance, I will note that she has had similar ongoing difficulties with other employees in what should be mundane workload/personnel issues.

**Article 23, Section 1 Disciplinary and Adverse Actions**

The parties agree to the concept of progressive discipline which is designed primarily to correct and improve employee behavior. A common pattern of progressive discipline is reprimand, short term suspension, long term suspension and removal. Any of these steps may be bypassed where management determines by the severe nature of the behavior that a lesser form of discipline would not be appropriate. The parties further agree that normally, discipline should be preceded by counseling and assistance including oral warnings which are informal in nature and not recorded. Counseling and warnings will be conducted privately and in such a manner so as to avoid embarrassment to the employee.

I have not had any discussion with Chul or any other member of management regarding being unprofessional or disrespectful. In my appraisal, it states that I am professional with the public and coworkers. I have had some encounters with the ADM, Amy Throop, and the DM, Chris Detzler, where I was treated less than professionally and raised my voice in response to theirs, and amid accusations of racism, being basically incompetent, rude, disrespectful, and a liar. I have an EEO complaint pending on these types of conversations and I am not sure if they have a place here. An Information Request will be submitted separately regarding management's allegation that such past conversations occurred. I don't feel that progressive discipline has been followed in my case, which points back to the Article 3, Section 1 violation.

This is the content of the 2/12/15 conversation as I recorded it in my notes the following day. I have spoken with the employees that normally are seated in the vicinity, and most either did not hear the conversation or were not in the office at the time. Only one employee overheard the conversation, but states that she prefers not to be involved.

- Teri—If you are here to discuss that email, it is not up for discussion. Chul (my supervisor) was at her desk.
- Sherril—I would like to talk to you. Chul got up to leave.
- Teri—No, if we are going to discuss this, then Chul you need to be here. I should have realized that she was not in the mood and left but I made the wrong decision and continued the discussion.
- Sherril—Now I am not sure where to go with the conversation. I feel that Teri is setting it up as a hostile situation, when all I want to do is to let her know that I meant no harm. I tell her that when I came back from vacation I was being asked by CRs about this notice issue.
- Teri—Are you here a TE or a union rep?
- Sherril —I am here as a TE
- Teri—You just go on and on and on about things and will not let them go. Allegation of voice raised—no voices raised until this point.
- Sherril—That may be true but that is not going to change me right now. You are not going to talk to

anyone that has broken any rules or stands up for themselves.  This can be very stressful and belittling.

**RELIEF SOUGHT**

I would like the reprimand letter to be retracted, and for the letter and all references to it and to the events of the day in question to be removed from my 7B personnel file.  I would also like to have a discussion with supervisor Teri Simmons with the intent being to repair and improve our work relationship, to be mediated by a neutral third party from outside of SSA.  It is my hope that this type of facilitated conversation will not only help us, but will give her some insight into her communication style and relationships with all employees.

*I hereby authorize my representative to examine any appropriate official document, personnel record, or medical information which may be related to the grievance.*

| EMPLOYEE SIGNATURE | DATE 3/4/15 |
|---|---|

**STEP 1 SUBMITTED**

| SUPERVISOR | TELEPHONE | ORAL PRESENTATION REQUESTED | DATE RECEIVED |
|---|---|---|---|
| | 866-931-9172 ex 20620 | ☒ YES  ☐ NO | 3/5/15 |

FORM SSA-2048-U3 (7-85)

---

| DISPOSITION OF GRIEVANCE | NAME OF EMPLOYEE | |
|---|---|---|

**STEP 1 DECISION BY**

| TITLE | SIGNATURE | DATE |
|---|---|---|

DECISION (enter disposition summary here and check block if narrative attached)☐

Grievance entered at Step 2.

| RECEIPT ACKNOWLEDGED BY EMPLOYEE OR UNION REPRESENTATIVE | | DATE |
|---|---|---|

☐ GRIEVANCE RESOLVED   ☐ PROCEED TO NEXT STEP   ☐ ORAL PRESENTATION REQUESTED   ☐ PHOTOCOPY TO UNION

| AS NEEDED DISIGNATATE STEP 2 OFFICIAL | NAME | LOCATION | TELEPHONE |
|---|---|---|---|

**STEP 2 DECISION BY**

| TITLE Chris Detzler, District Mgr | SIGNATURE | DATE Apr. 1, 2015 |
|---|---|---|
| PERSON SERVED Laura Novakoski | ☐ MAIL   ☒ DIRECT | DATE |

DECISION (enter disposition summary here and check block if narrative attached)☐

Relief granted.  I have removed the reprimand from Ms. Artis' eOPF and 7B folder.
Ms. Artis retired on 3/31/15. Therefore, it is no longer possible to schedule a mediation.

| RECEIPT ACKNOWLEDGED BY | (see next) | DATE |
|---|---|---|

me like that.
- Teri—I have never talked to you like this.
- Sherril—that is true, but I have heard you talk to others like that
- Teri—the way I talk to others is none of your business. (raised voice)
- Sherril—No, it is not my business unless you talk to them like that in my presence.  Stop pointing your finger in my face.
- Teri—pointing her finger—You get out of my cubicle.  Chul, you better handle this. (raised voice)
- Teri comes out of her office and yells at me not to talk to her.  I was not talking to her.  Chul had said to me that he and I would discuss this and I was responding to him.  I never suggested speaking to Chul about this.
- I raise my voice and I said, you are the supervisor, if I cannot talk to you who should I talk to?  This was the first time that I raised my voice.
- Teri yells at Chul again and points her finger—Chul you better handle that.

To deal specifically with the information alleged in the reprimand:

- I did not "stand up" up at any point – I approached the cubicle where Teri and Chul were seated, and remained standing throughout the conversation.  The allegation that I stood up is one example of how this episode is being falsified to shift blame onto me for escalating the situation.  They both stood up at some point during the conversation.

- I was also not the one to initiate a louder tone or hostility. As is clear from my record of the conversation and from my emails, I was consistently calm and focused on the SSI technical issue, in contrast to Teri.  I approached her that day in a valid effort at good communication and conciliation, and her inept and hostile response was truly baffling to me.  I only raised my voice at the end of the conversation in response to comments directed at me as I was already walking away and was farther from the cubicle.

- I have checked with nearby employees, and only one confirmed that they overheard the conversation; therefore, I don't believe that other employees were "disrupted."  Just because a loud conversation has the *potential* to be disruptive, again this should not be presented as a fact nor as my fault.

- Chul and I have never discussed the importance of treating others respectfully.  I have only received this type of feedback in group discussions when it was just a general topic.

- I was not frustrated by the email situation at all.  I just wondered what is my job, if employees are informed not to discuss technical issues with me and I am not able to provide feedback to management on those issues.  Teri should have recognized that my focus was an entirely appropriate procedural question that is part of my job as a TE, rather than becoming defensive and framing it as some kind of confidential personnel issue.  The culture in this office is to press hard on

## Artis, Sherril

**From:**      Artis, Sherril
**Sent:**      Thursday, February 12, 2015 9:47 AM
**To:**        Artis, Sherril
**Subject:**   FW: Feedback Reports on Quality

**From:** Simmons, Teri
**Sent:** Thursday, February 12, 2015 8:43 AM
**To:** Artis, Sherril; #SE WA 923 Mgmt
**Subject:** RE: Feedback Reports on Quality

Sherril,

This is not your issue or your decision.  I told you that we as in management will address the issue.

Thank you

*Teri Simmons*
*Operations Supervisor*
*Vancouver, WA 923*
*(866) 931-9172 ext. 20625*

**From:** Artis, Sherril
**Sent:** Thursday, February 12, 2015 8:41 AM
**To:** Simmons, Teri; #SE WA 923 Mgmt
**Subject:** RE: Feedback Reports on Quality

The information did not come from the employee with the write up.  It had obviously been discussed with others.  In order to be an effective TE and CR, it is critical that this type of technical write up be shared with all.  I mentioned to Amy just a couple of days ago that a notice was not required on an admin waiver approval.  Not knowing that the office had already been written up.  From my take on this, there is a conflict in policy.  There at least need to be a reference in http://policynet.ba.ssa.gov/poms.nsf/lnx/0900803205 that a manual notice is required for admin waivers.  The POMS reference that given for when a manual notice is required still does not address admin waivers.  Central Office needs to know that this policy is not clear.

I now understand what office policy is regarding these write ups and the discussions between the CR and supervisor.   I will leave it at that, but employees are going to discuss work and feel technically inadequate when something of this magnitude becomes an issue.   We approve many admin waivers, and if a manual notice is required, that is a big change in how we process this workload.

I will let this be and refer the CRs to their supervisor.

Sherril

1

**From:** Simmons, Teri
**Sent:** Thursday, February 12, 2015 7:28 AM
**To:** Artis, Sherril; #SE WA 923 Mgmt
**Subject:** RE: Feedback Reports on Quality

Thank you for the information.   The quality reviews are a discussion between the supervisor and the employee.  I am not sure why the employee is discussing it with you as we have informed them to let us know if they have questions.

We will look into the information you have shared.   We always take into consideration what is appropriate to share with the TEs.

*Teri Simmons*
*Operations Supervisor*
*Vancouver, WA 923*
*(866) 931-9172 ext. 20625*

**From:** Artis, Sherril
**Sent:** Wednesday, February 11, 2015 4:34 PM
**To:** #SE WA 923 Mgmt
**Subject:** Feedback Reports on Quality

It has come to my attention, as a TE, that we received a feedback report where we failed to issue a manual notice on an administrative waiver.  It has been policy that waiver approvals do not require manual notices.  It is not listed that the administrative waiver is an exception to this rule.  Even though this was a feedback report on one person's actions, it would benefit the entire staff if this information is shared.  It might be a good idea to share all feedback report information with the TE's, as there may be a possibility that the write up can be rebutted or we may be able to show that the policy is unclear.  Feedback information  is a great opportunity for everyone to learn.

http://policynet.ba.ssa.gov/poms.nsf/lnx/0900803205


**Sherril Artis TE/923**
*TEAM—Together Everyone Accomplishes More!*

2

JUN-00-2000  03:00    SS OFFICE VANCOUVER    P.001



# SOCIAL SECURITY

805 BROADWAY ST, SUITE 500, VANCOUVER, WA 98660
FAX: (360) 696-7944   PHONE: (866) 605-8967

# Fax

| To: | Laura Novakoski | From: | Vancouver SSA – Chul Shirts |
|---|---|---|---|
| Fax: | 503-326-2898 | Pages: | 8 6 |
| Phone: | | Date: | April 1, 2015 |
| Re: | Sherril Artis | CC: | |

x **Urgent**     x **Per Request**     ☐ **Please Comment**     x **Please Reply**     ☐ **Please Recycle**

● **Comments:** Please sign the grievance form to acknowledge receipt and that the grievance is resolved and return to me. Thank you.

**Important Note:**
This message is intended only for the use of the individual or entity to which it is addressed. It may contain information that is privileged, confidential and exempt from disclosure under law. If the reader of this message is not the intended recipient or the employee or agent responsible for delivering the message to the intended recipient, you are notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone at the number above, and destroy the contents of this communication. Thank you.

Social Security Administration Vancouver, WA 98660

JUN-05-2000  03:06        SS OFFICE VANCOUVER

| EMPLOYEE OR UNION REPRESENTATIVE | ⟨signature⟩ | | 4 / 1 / 15 |
|---|---|---|---|
| ☒ GRIEVANCE RESOLVED ☐ PROCEED TO NEXT STEP ☐ ORAL PRESENTATION REQUESTED ☐ PHOTOCOPY TO UNION | | | |
| AS NEEDED DISIGNATATE STEP 3 OFFICIAL ➞ | NAME | LOCATION | TELEPHONE |

| STEP 3 DECISION BY | | |
|---|---|---|
| TITLE | SIGNATURE | DATE |
| PERSON SERVED | ☐ MAIL ☐ DIRECT | DATE |

DECISION (enter disposition summary here and check block if narrative attached) ☐

| RECEIPT ACKNOWLEDGED BY EMPLOYEE OR UNION REPRESENTATIVE | | DATE |
|---|---|---|
| ☐ GRIEVANCE RESOLVED ☐ YES ☐ NO ☐ | | PHOTOCOPY TO UNION |
| FOR LABOR AND EMPLOYEE RELATIONS STAFF USE ➞ | GRIEVANCE CODE: | DISPOSITION: | DISPOSITION LEVEL: |

FORM SSA-2048-U3 (7-86)

SSA/EEO  misinformed the Commissioner on how long it took for them to grant me a hardship.  My doctor provided me with the letter on March 10, 2011.  I requested the hardship transfer o 03/16/2016.  On June 16, 2011, I followed up on my initial request to be accommodated. My vision was not good.  After four months and a minor car wreck, I solicited the assistance of Beth Hidano, Area Director.   My request was granted four months later.

I assume that the Seattle Region wanted the Commissioner to believe that they were timely in granting accommodations.

## Artis, Sherril

**From:** Humphreys, Sarah
**Sent:** Friday, June 07, 2013 12:58 PM
**To:** Artis, Sherril
**Subject:** RE: May 10, 2013 email to Acting Commissioner Carolyn Colvin

Dear Ms. Artis:

I just wanted to let you know that I've let the Seattle Region Civil Rights and Equal Opportunity Manager know that you felt that the EEO Counselor talked you into withdrawing Case No. SEA-11-0626. We want to make sure that all EEO Counselors follow proper procedures.

I also wanted to respond to your question about Acting Commissioner Colvin and whether she might have worked in Little Rock in the 1970s. As far as I'm aware, Ms. Colvin was working in the Baltimore area in the 1970s and 1980s, so she probably wasn't the Carolyn Colvin you knew. Wouldn't it have been a small world if she had been!

Yours sincerely,

*Sarah*

Sarah Humphreys
Senior Attorney
Office of Civil Rights and Equal Opportunity
Social Security Administration
Telephone: 410-594-0265

---

**From:** Artis, Sherril
**Sent:** Friday, May 31, 2013 7:33 PM
**To:** Humphreys, Sarah
**Subject:** RE: May 10, 2013 email to Acting Commissioner Carolyn Colvin

Sarah,

I did not expect a response to my email. I really appreciate your time but it was definitely not expected. I am sure that everything looks great according to agency policy and guidelines—on paper. I don't want to make a big deal out of my situation because I do qualify for retirement. I have stepped out of trying to seek any further advancement with the agency and that is my choice. I sought three different positions after I filed this complaint and then I realized that management was not going to allow it. There was less than favorable wording in my appraisal that I had never experienced before. I filed a retaliation complaint in which the EEO representative basically talked me out of pursuing because she felt that I had been transferred to another office and that there was no need to pursue this aspect. I understand that she was just doing her job by trying to clear out cases but it made me feel like management's bad behavior was okay and that the important thing was that I was out of there. I told her repeatedly that I did not feel comfortable withdrawing. I finally gave in and signed the withdrawal form. I know now that was a big mistake. My attorney later told me that retaliation would have been easier to prove. I believe that the EEO rep talking a complainant into withdrawing should be eliminated. Unless a complainant initiates withdrawal of an EEO complaint, then the representative should not be allowed to initiate that conversation with the complainant. This action by the EEO representative served me an injustice. I would have never withdrawn this complaint without the prompting of the EEO representative.

1

When the harassment started on the job, I went to the manager of the office to voice my discomfort. I asked that he hold a meeting with the ADM, the OS and I so that we could figure out what was going on. He did absolutely nothing but allowed the ADM and OS to continue. The ADM threatened me by telling me that the new OS would be tasked with removing my leadership image. The OS stooped to the level of smacking a clip board in his hand when he approached my desk. I am assuming it was for intimidation. It was so uncomfortable. At my age I believed that I had no choice but to file an EEO complaint. I was not as young as the others and did not have the time to redeem myself and get promoted. I was once a manager and ADM but stepped out due to the health of myself and my mother. This agency had always been so good to me and my family that it never crossed my mind that I would not be able to work myself back into a management position. I attempted to get a temporary hardship to care for my mother who had cancer and the manager basically ignored the request. I had to use all of my leave flying back and forward to Arkansas until I finally submitted a permanent transfer. The permanent transfer request got me the temporary transfer that I had sought a year earlier. I have witnessed employees being able to care for sick relatives, getting training when they changed positions, being allowed to process workload that would gain them the job knowledge that would allow them to mentor and become proficient in their jobs. The ADM transferred her girlfriend to another office and another employee was transferred so that her sister could be promoted but I could not go and help out with my dying mother. I was in shock that the agency that I have spent a lifetime working for and loved, turned their back on me when I was in need. The manager wrote in the EEO complaint that I did not want to be supervised. He had never mentioned anything like that to me before. The negative items in my appraisal had never been mentioned to me before the appraisal. It sounded like retaliation to me. If there was behavior that I needed to correct, they should have discussed this with me, not mention it for the first time in an appraisal or during an EEO investigation. Yes, I dropped the EEO complaint after they only offered me 25 hours of over 300 hours of leave that I had used and refused to apologize or to admit to any wrong doing.

I have always been a good employee. I have received awards and accolades all 37 years that I have been with this agency. I would have never dreamed that I would have a need or have the audacity to file an EEO complaint. The behavior of managements was literally making me ill. I could not control my blood sugar and I would sweat with each encounter that I had with them. I thought they were going to fire me. Real or imagined I was in a horrible position. If I had gotten some of the younger employees to testify, there were aspects of the complaint that the attorney believed that we could have prevailed. Saying that retaliation, harassment, or discrimination is against the law and enforcing it are two separate issues. An employee living with the fear and intimidation is another issue. There was no way that I would put them in that position. I did take advantage of the EAP program and got a lot of my anguish out on the table but my health and sense of worth has suffered. I am an old, sick, black woman but I am all that I have. I no longer have the self-confidence to assert my position. I did not plan to rehash this horror prior to leaving the agency. Filing the EEO complaint was a big mistake. My loss was too great for me to ever be the same person again. My daily objective is to mind my own business, keep my head down working, and not to get fired. My objective when I retire is to meet with the Regional Commissioner here and let him hear my side of the story and hopefully get some changes made with training for employees that downgrade, how to resolve some issues without going through the EEO process, and training for managers (interpersonal skills/communication/EEO withdrawals) .

Again, thank you for the time that you spent looking this over. I really did not mean to use anyone's time. Keeping a steady reminder of what will be tolerated is the only thing that can be done. I believe that most managers are wholesome and fair in their dealings with employees. I also believe that they appreciate the work of their staff and give individuals the hope for opportunity. It is those few who either know exactly what they are doing or have no clue at all that destroys the advancement and mental health of some. We have to believe in the system that we have, even if it is flawed. It is all that we have. If intimidating, bullying, ignoring, and excluding are not discrimination or harassment we are all in trouble. It is not about winning a case; it is about making it stop. I just wanted it to stop and I should not have had to file a complaint that destroyed my career or to leave that office under duress.

2

I once worked with a Carolyn Colvin back in the 1970's in Little Rock Arkansas.   Would she happen to be the same?


Sherril Artis TE/923
If you don't stand for something, you will fall for anything···

---

**From:** Humphreys, Sarah
**Sent:** Friday, May 31, 2013 6:28 AM
**To:** Artis, Sherril
**Subject:** May 10, 2013 email to Acting Commissioner Carolyn Colvin

Dear Ms. Artis:

Acting Commissioner Carolyn Colvin received your May 10, 2013 email responding to her Equal Employment Opportunity (EEO) Policy Statement broadcast.  Since Equal Employment Opportunity (EEO) issues are within the Office of Civil Rights and Equal Opportunity's (OCREO) responsibility, the Acting Commissioner's office forwarded your email to OCREO for a response.

In your email, you alleged, among other things, that the EEO complaint system is flawed and that "fear, intimidation, favoritism, exclusion, and *plain old I have the power and you don't*  can be the norm for some of us."  You suggested that it would help to have a hotline where employees can report unfairness, exclusion, and harassment.

I want to assure you that we are committed to creating and maintaining a work environment that is free from any form of discrimination, harassment, or reprisal.  While we do not yet have a hotline, you may always report unfairness, exclusion, harassment, or any other alleged discriminatory actions by emailing ||SEA ORC CREO or calling the Region X CREO Manager at (206) 615-2674.

Because of the concerns you expressed about your experience with the EEO complaint process, we reviewed our records to determine whether we properly handled your complaints.  Our records reflect that in April 2010, you filed a formal EEO complaint (Case No. SEA-10-0322) alleging race, sex, and age discrimination and a hostile work environment.  OCREO investigated your allegations and you received a report containing the results of the investigation.  Region X management did its own investigation into your hostile work environment allegation but found no evidence of a hostile work environment.

You requested a hearing before an Equal Employment Opportunity Commission (EEOC) administrative judge (AJ) on SEA-10-0322.  The EEOC AJ reviewed all the evidence in your case in the light most favorable to you, but concluded that you had failed to establish any genuine issues of material fact requiring a hearing and granted the agency's Motion for Summary Judgment.  You subsequently appealed the AJ's decision by filing a civil action in U.S. District Court, but later voluntarily withdrew your civil action.

Our records also reflect that in June 2011, you sought EEO counseling based on management retaliation and failure to accommodate your reasonable accommodation request for a transfer to the Vancouver, Washington Field Office (FO) (Case No. SEA-11-0626).  In July 2011, management approved your reasonable accommodation request and transferred you to the Vancouver FO.  You subsequently asked the Seattle Civil Rights and Equal Opportunity (CREO) Manager whether you needed to sign anything if you decided not to pursue SEA-11-0626.  The CREO Manager discussed the withdrawal process with you and sent you the

withdrawal form.  You talked with an EEO counselor four days later and said that you were going to withdraw your complaint.  On July 20, 2011, you faxed the EEO Counselor a *Withdrawal of Complaint of Discrimination* form, saying "I have decided to withdraw my complaint.  Thanks for all of your help, time and patience."

Based on our review of your concerns and the actions in response to your EEO complaints, we are confident that you had a full and fair opportunity to present and prove your allegations and that we took proper action to address your concerns.

We hope this information is helpful.

Sincerely,

*Sarah Humphreys*

Sarah Humphreys
Senior Attorney
Office of Civil Rights and Equal Opportunity
Social Security Administration

---

**From:** Artis, Sherril
**Sent:** Friday, May 10, 2013 1:30 PM
**To:** Colvin, Carolyn
**Cc:** 'tt_nation@yahoo.com'
**Subject:** FW: COMMISSIONER'S BROADCAST -- 05/10/13

Ms. Colvin

This is a wonderful statement and I believe that it is practiced most of the time at SSA.  I am at the age where I could retire; therefore, I am not that interested in putting up a fight for myself.  I have experienced some of the things that you mentioned that should not be tolerated.  They should not be tolerated but many times the victim has to count their blessings and move on.  Fear, intimidation, favoritism, exclusion, and *plain old I have the power and you don't* can be the norm for some of us.  When one is going through the horror, it is so belittling, embarrassing, and lonely.

Even the EEO complaint system is flawed.  The EEO representatives push for the case to be dropped and demand a signed statement stating that you were not coerced into dropping the case.  I am grateful that I was not discriminated against earlier in my career because I have had a very rewarding experience.  Discrimination is alive and well at the Social Security Administration.  Maybe a hotline where unfairness, exclusion, and harassment can be reported would help.  From my experience, it is more important that the agency wins the case and blame the victim than to correct the problem.  I have been enlightened to know  that they see not what they do.

I appreciate the fact that getting this information out to the field offices is important to the Administration.  If it changes the behavior of just one person, it is worth the effort.

Sherril Artis T/E 923

*When you know better, you do better...Maya Angelou*

---

**From:** ^Commissioner Broadcast

4



**The Vancouver Clinic**

360-882-2778
www.tvc.org

**INTERNAL MEDICINE**
2525 NE 139th Street
Vancouver WA 98686
Phone: 360-882-2778

March 10, 2011

Patient:     **SHERRIL A ARTIS**
Date of Birth: **5/6/1958**
Date of Visit: **3/10/2011**

To Whom It May Concern:

It is my medical opinion that Sherril Artis would medically benefit from job transfer to Vancouver area closer to home to reduce necessity to drive in higher traffic, stressful road conditions based on findings following ophthalmology evaluation 2/4/11 at OHSU with cataracts and diabetes effect on eyes that make night, rain condition driving more difficult.  Surgical intervention is not advised at this time for another 2 years and would be less dangerous, stressful to be in closer driving proximity to home.

If you have any questions or concerns, please don't hesitate to call.

Sincerely,

JENS METZGER, MD

*The Vancouver Clinic will be the best in the Northwest for patient-focused, quality-proven care.*

**87th Avenue**
700 NE 87th Avenue
Vancouver, WA 98664

**Battle Ground**
2005 W Main Street
Battle Ground, WA 98604

**Columbia Tech Center**
501 SE 172nd Avenue
Vancouver, WA 98684

**Salmon Creek**
2525 NE 139th Street
Vancouver, WA 98686

To:          Steve Jollensten, Hardship Coordinator

From:        Sherril Artis

Date:        March 16, 2011


This is my request for a medical hardship transfer to the Vancouver, Washington field office.  I have been challenged with vision problems since 2006.  The initial problem that I experienced with my vision was due to uncontrolled blood sugars.  After I gained some control over my blood sugars, my vision did improve.  In 2009, I noticed that I was again struggling with my vision.  This time the eyelids were swollen and my eyes were painful.   I switched from an optometrist to an ophthalmologist.  In January 2010, I was diagnosed with cataracts and diabetic issues in my right eye.  I explained to the doctor the problems that I was having with my eyesight when the weather conditions were dark and rainy.  I was scheduled for a follow-up appointment for the fall of 2010.  When I went back to the eye doctor in the fall of 2010, my vision had gotten progressively worse.  In August 2010, the Oregon police stopped me because I was not "holding my lane".  I had also been in two near car accidents and barely missed hitting a pedestrian.  In February 2011, I went to Casey Eye Institute and saw Dr. Lorinna Lombardi. Dr. Lombardi informed me that I have cataracts in both eyes and diabetic issues in both eyes. This diagnosis explained the glare and blinding conditions that I was experienced while facing the headlights of oncoming cars.   This is a troublesome condition that occurs when I am driving across the Glen Jackson Bridge to and from work.

I currently reside in Vancouver.  If I am allowed to work in the Vancouver office, this will remove my need to maneuver the Portland traffic and rainy weather conditions.   My spouse works in Vancouver and he would be able to drop me off and pick me up from work when necessary.  This situation is dangerous for me and for other drivers.  I appreciate any consideration that I receive on this request.

**Artis, Sherril**

| | |
|---|---|
| **From:** | Artis, Sherril |
| **Sent:** | Thursday, June 16, 2011 10:48 AM |
| **To:** | Jollensten, Steve |
| **Cc:** | Temple, Terry |
| **Subject:** | Hardship Request |

Steve,

On 03/15/2011, I submitted a hardship request, where I revealed the problems that I am experiencing with my vision. To date, I have not received a response to this request. If I cannot be accommodated with a hardship, it is important that I make my doctor aware of this decision. The doctor is delaying eye surgery because my right eye has not gotten to the point where my medical insurance will pay for the surgery. My left eye does qualify for immediate surgery. Because of diabetic eye complications along with the cataracts, the doctor was reluctant to proceed with surgery on the left eye. The doctor also felt that my vision could be corrected with glasses to 20/20 between the cataracts. I still have vision issues caused by glare from light/headlights and with rain/darkness. If I cannot be accommodated with a hardship transfer, I have no choice but to insist on this surgery being performed before the two years recommended by the doctor. I can possibly get my medical insurance to pay for surgery to right eye with a letter denying the hardship. According to my endocrinologist, I am not at a point where she considers me to be disabled; therefore, applying for disability is not an option.

I believe that I have been patience and given ample amount of time for this decision to be made. The office where I am currently working is in the process of moving further away from my residence and the drive is going to be even more dangerous. I am preparing for a negative outcome to my request by seeking eye surgery and checking into public transportation. I submitted a request for reasonable accommodations and I am not sure if that interfered with the processing of the hardship request. If so, please let me know.

I would appreciate any consideration that I could receive on either an approval or a denial on this request. I need to prepare for the upcoming period of rain and darkness. It is challenging for me to see during the fall and winter months. The sunshine is also problematic for seeing through the cataracts.

*Sherril Artis TE/940*
*2625 SE 98th Ave*
*Portland OR  97266*
**(866) 964-1003 ext 18335**
**(503) 761-4855 fax**
Click here *for available online services.*

1



**SOCIAL SECURITY ADMINISTRATION**                                   **Seattle Region**

Date: July 11, 2011

Dear Ms. Artis:

This letter concerns your request for a hardship transfer from your current duty station at the Portland East Field Office, where you are a GS-12 Technical Expert, to the Vancouver Field Office, which is closer to your home.

You stated that you have been challenged by vision problems since 2006, which are related in part to your diabetes. You also stated cataracts have resulted in even more vision problems beginning in January 2010. You described problems involving glare and low light situations, which made it dangerous for you to drive.

Because you based the request for a hardship transfer on a medical reason, we treated it as a request for reasonable accommodation[1] and asked for supporting medical documentation. You provided this medical documentation on April 26, 2011. Jens Metzger, M.D., an internal medicine specialist, opined that you needed a transfer to the Vancouver area to reduce your need to drive in higher stress road conditions. Dr. Metzger based this opinion upon an evaluation performed by Lorinna Lombardi, M.D., an ophthalmologist from Oregon Health Sciences University, who found you had visual deficits due to cataracts and diabetes that made driving at night and in rain conditions more difficult.

I accept your doctors' opinions that a transfer to an office closer to your residence would be less stressful and less dangerous. I am therefore approving your reassignment to a vacant technical expert position in the Vancouver Field Office. This reassignment will take effect on the pay period beginning July 17, 2011

If you have any questions regarding this matter, please see your supervisor.

                         Sincerely,

                         Beth Hidano
                         Area Director II

---

[1] Pursuant to the Rehabilitation Act, the Agency provides reasonable accommodation to qualified individuals with disabilities unless the accommodation would impose an undue hardship on the Agency. An "individual with a disability" is someone who has a physical or mental impairment that substantially limits one or more of the major life activities. A "qualified individual with a disability" is someone who can perform the essential functions of his position, with or without reasonable accommodation.

Emails to then Area Director, Beth Hidano, on the horrors that the staff was experiencing as a result of the hostile work environment during my first period of discriminations. The agency refused to give me a compassionate detail to care for my dying mother. It took a year before I could go to her. This office forced me to exhaust all my leave flying to Arkansas to care for her. They stood in the way of every promotion that I tried for. But EEO forced my withdrawal so that these two could be promoted.

Email to Beth Hidano 09/28/2012

**Artis, Sherril**

| | |
|---|---|
| **From:** | Sherril Artis <tt_nation@yahoo.com> |
| **Sent:** | Friday, September 28, 2012 6:11 AM |
| **To:** | Artis, Sherril; Artis, Sherril |
| **Subject:** | Beth |

Beth,

Congratulations on your retirement. I want to express to you my gratitude for your help in getting me transferred to the Vancouver office.   Everyone is treated fairly here and management listens and responds to each individual.   This is the work enviroment to which I had been accustomed.   Portland East was a terrible place to work and I was embarrassed to see management behaving so badly.   I am only speaking of this now because I would like for you know the horrors that many of us felt working in that office. I will spare you the details but targeting, discriminating and unfairness created a hostile work enviroment for many non-white women.  I have always been Black and female, but not always old.   I had been discriminated against albeit it had been long before Portland Eastand.   It is a lonely place.   One might not know how she got there but only she can find the road out.   My children have been taught that when they have gotten an education, pulled their pants up, tightened their belts, spoken softly, sought first to understand, changed their hair/attire, and the same problems exist--then that problem is something they cannot change.   It is called discrimination!!     I am normally a pretty good judge of character but I was utterly shocked at what Terry Temple allowed to happen to non-white women in that office.   Terry is a very fearful person.   he will neither stand up to or for an individual.   When I repeatedly told him that I was feeling very uncomfortable about Karen's erratic and hateful comments toward me, he ignored me and eventually treated me as the troublemaker.   His comment was that Karen did not hate anyone.   Terry was dishonest about my request to detail to Arkansas to care for my mother.   I made the verbal request to Terry in January 2009.   He never gave me any directions on what I should do.   I was pretty naive and trusted that he would assist me.   He didn't!!  He blamed the slow process on the Regional Office.   Through my EEO complaint, I discovered that he did not ask about a transfer for me until I was already in Arkansas.   I called him to see which office I should report to and he tap danced around the issue.   After the call to him on 02/17/2009, he refused to take any more calls from me.   When I returned to the office, I was harrassed by Karen and Jesse daily.   Karen told me that this organization did not owe me anything.   The hatred and venom in her eyes let me know that is   what she meant. Several days each week, Karen smelled of alcohol.   Terry was made aware of Karen's drinking but it continued.   Workloads were removed and added to me without their letting me know that I was or was no longer responsible for that workload.   I found out by getting security violations, a member of the public telling me that they had been told that I was handling a certain workload, or when something failed to be done, I was then told that it had been  my responsibility.   It was a nightmare!! Jesse would come to my desk and slap a clipboard in his hand while i was interviewing by phone.  I could not believe that Terry was allowing these things to happen in this office.   A year after my initial request, I put in to permanently transfer to Arkansas to care for my mother.   This time, I knew the process and I was not going to trust Terry.   I was granted a detail and went to Arkansas on 03/09/2010.  My mother died on 04/16/2010.  I am grateful for the month that I had with her.

This is just my story and this is the water down version.    I have received help from EAP and it is one of the programs that does help.   The EEO process is an absolute joke.  No one wants to deal with discrimination.   Place the blame on the victims and management gets away so that they can do it again.  I put in for other jobs and I was given a less than favorable review by jesse.  Of course, I did

not get any of these positions.  This was after I had served on the Martinez Cadre and had gotten rave reviews from Fair Tegner.   It was also after I had filed the first EEO complaint.   It was retaliation!!  Your lovely EEO staff, in Seattle, badgered me to drop the the retaliation complaint since I had been transferred to Vancouver.  I felt pressured to drop the retaliation complaint.  Of course when I hired an attorney, he said this was the complaint that I should have pursued since it would have been easier to prove.   Other women that were treated unfairly were Franchesca Ariaza, Yen Truong and Angie Baker.

I repeatedly told EEO that I did not want to withdraw my EEO complaint. I tried in every way possible to get them to stop asking. EEO was aware that I was applying for jobs to help me to attain my high 3 years for retirement calculations. After I was transferred to Vancouver, the harassment by EEO for me to withdraw my request became more intense. I finally gave in. My employee profile of emails and instant messages during this time will prove their continued harassment. I believe her name was Melissa Bates.

Shortly after I withdrew, Terry Temple and Karen Jesser were immediately promoted. EEO should not be able to strong arm discriminated employees into withdrawing.

The Commissioner's office was not interested in either my maltreatment, the fact that EEO was harassing employees into withdrawing, or that disabled employees were not being accommodated timely—nor were the employees being informed on the status of there accommodation request.



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Seattle Field Office**

Federal Office Building
909 First Avenue, Suite 400
Seattle, WA 98104-1061
Seattle Direct Dial: (206) 220-6885
TTY (206) 220-6882
FAX (206) 220-6911

**The Complainant may elect to withdraw his request for a hearing and further litigation by completing one or both of the forms below and mailing them to the EEOC office in the enclosed postage paid envelope.**

## WITHDRAWAL OF FORMAL EEO COMPLAINT

I, _____ , do hereby voluntarily withdraw my formal
   Complainant's Name (please print)

Equal Employment Opportunity complaint, EEOC Hearing No. _____ ,

Agency Case No. _____ . I understand that by withdrawing my complaint I waive

my rights to a hearing, to a final agency decision, or to further appeal, and that this complaint is

now closed.

_____     _____
Complainant's Signature         Date

The agency has been wrong and unlawful
in how I have been treated.
I requested mediation on this matter
through Richard Rodriguez. I have
been discriminated against Regardless of
dismissal or any other resolution that
you decide to administer. I will not
withdraw this complaint.
                  Sherri Art

## WITHDRAWAL OF REQUEST FOR HEARING

I, _____, do hereby voluntarily withdraw my request
      Complainant's Name (please print)

for a hearing in my formal Equal Employment Opportunity complaint, EEOC Hearing No.

_____, Agency Case No. _____. I understand that I will

receive a Final Agency Decision based on the present record and will be informed of my appeal

rights.


_____            _____
Complainant's Signature                          Date




I do not withdraw.


Shunf Art

Social Security failed to respond to request from my private disability insurance company. The request was sent directly to Chris Detzler. To pay me the disability, they wanted to speak with my employer about how my health affected my work. Chris failed to respond. The insurance company threatened to dismiss my claim and pay nothing. The fact that I received a retirement and not a disability check, made them doubt my disability. I contacted Senator Patty Murray of Washington state. She was instrumental in my receiving a lump sum of $45K. The amount I could have received in total benefits was $61000K, I lost $16K due to the Social Security Administrations refusal to respond.

16K Loss
8K Loss moving expenses

## Proof that Senator Patty Murray assisted me when my employer refused.

I had a major depressive episode after the hearing in 3/2021 after I heard how Chris lied and destroyed my life!



# CHI St. Vincent

SVI St Vincent Infirmary Medical Center
#2 St. Vincent Circle
Little Rock, AR 72205
(501) 552-3000

## ARTIS, SHERRIL ANN

**DOB:** 05/06/1958
**MRN:** 1202037
**Visit Date:** 04/19/2021

## Your Visit Summary

## Your Care Team

Primary Provider:
DELCASTILLO-HEGYI, CHRISTI

## Your Diagnosis

Depression, Depression
Depression

## Patient Portal

**Reminder:** Be sure to sign up for the MyOneCare patient portal. The patient portal gives you access to your medical information, including these discharge instructions, using your computer, smartphone or tablet. When you provide your email address at registration, you will receive an invitation to our patient portal. This invitation will not expire, allowing you to activate your account at any time. Question? 1-888-670-9775

You may also obtain a copy of your Emergency Department visit from Medical Records by calling the hospital phone number listed above and asking to be directed to the Medical Records Department..

If you had special tests, such as EKG's or X-rays, the interpretation of your tests given to you by the Emergency Department Physician is a preliminary report. Some fractures and illnesses fail to show up on preliminary tests. These will be reviewed again and we will call you if there are any new suggestions. If your symptoms continue notify your physician. After you leave, you should follow the instructions provided.

# What to do next

## Follow-Up Appointments

**Follow Up with** Follow up with           **Comments** call for follow up appointment
primary care provider
**When** Within 1 to 2 weeks

# Allergies

HYDROcodone
Lexapro
metFORMIN
statins

# Immunizations This Visit

No Immunizations Found

# Education Materials

## Major Depressive Disorder, Adult

Major depressive disorder (MDD) is a mental health condition. It may also be called clinical depression or unipolar depression. MDD usually causes feelings of sadness, hopelessness, or helplessness. MDD can also cause physical symptoms. It can interfere with work, school, relationships, and other everyday activities. MDD may be mild, moderate, or severe. It may occur once (single episode major depressive disorder) or it may occur multiple times (recurrent major depressive disorder).

## What are the causes?

The exact cause of this condition is not known. MDD is most likely caused by a combination of things, which may include:

- Genetic factors. These are traits that are passed along from parent to child.
- Individual factors. Your personality, your behavior, and the way you handle your thoughts and feelings may contribute to MDD. This includes personality traits and behaviors learned from others.
- Physical factors, such as:
  - Differences in the part of your brain that controls emotion. This part of your brain may be different than it is in people who do not have MDD.
  - Long-term (chronic) medical or psychiatric illnesses.
- Social factors. Traumatic experiences or major life changes may play a role in the development of MDD.

## What increases the risk?

This condition is more likely to develop in women. The following factors may also make you more likely to develop MDD:

- A family history of depression.
- Troubled family relationships.
- Abnormally low levels of certain brain chemicals.
- Traumatic events in childhood, especially abuse or the loss of a parent.
- Being under a lot of stress, or long-term stress, especially from upsetting life experiences or losses.
- A history of:
  - Chronic physical illness.
  - Other mental health disorders.
  - Substance abuse.
- Poor living conditions.

Patient: ARTIS, SHERRIL ANN MRN: 1202037 FIN: A2110900293                                        Page 5 of 11

# Medications

| | What | How Much | When | Instructions | Next Dose |
|---|---|---|---|---|---|
| **New** | venlafaxine (Effexor XR 37.5 mg oral capsule, extended release) | 1 cap Oral | Every Day | Duration: 7 Day(s) After 7 days of 37.5 mg, take 75 mg daily.<br><br>Printed Prescription | |
| **New** | venlafaxine (Effexor XR 75 mg oral capsule, extended release) | 1 cap Oral | Every Day | start taking 4/ 26/ 2021<br><br>Printed Prescription | |

**The home medications listed are only as accurate as the information you provided. Please continue taking all of your medications prescribed by your Primary Care Provider unless specifically told to change or discontinue the medication. Please direct any questions regarding your home medications to your Primary Care Provider.**

Take your medications faithfully. Do NOT skip medication. Do NOT stop taking medications without the direction of a physician. Carry a list of your medications with you at all times, and take this medication list with you to your first follow up visit. Report any side effects. Avoid herbal remedies unless discussed with your physician.

As part of your treatment plan, your physician may have prescribed a limited course of a controlled substance. This medication may be given to help people with moderate or severe pain or for other medical conditions, but there are risks involved with treatment. Common side effects may include nausea, constipation, drowsiness, sweating, itching, dry mouth, and rash. More serious side effects may include cognitive and motor impairment, like problems with thinking, concentrating, alertness, and movement (e.g. slowed reflexes), and driving and operating heavy machinery can be dangerous. It is important for you to talk to your physician if you have these side effects or questions. These controlled substances can produce physical dependence and be habit-forming if taken for an extended period of time, which means that the body has gotten used to them and may experience withdrawal symptoms if they are abruptly stopped. Withdrawal symptoms can include runny nose, sweating, goose bumps, diarrhea, abdominal cramping, rapid heartbeat, difficulty sleeping, and nervousness. Please dispose of unused and expired medications per pharmacy guidance.

*allergic to anti anxiety and anti depressant meds. This was prescribed after the breakdown after realizing Chris had lied to executive staff. I told them I was allergic but they tried this dosage. Afraid to send me away with nothing*

**··PATTY MURRAY**
WASHINGTON

COMMITTEES:
APPROPRIATIONS
BUDGET
HEALTH, EDUCATION, LABOR,
AND PENSIONS
VETERANS' AFFAIRS

# United States Senate

WASHINGTON, DC 20510–4704

March 9, 2016

Mrs. Sherril Artis
1309 SE Park Crest Ave
Vancouver, Washington 98683

Dear Mrs. Artis:

Thank you for contacting my office regarding the difficulties you have been experiencing.  I would be happy to assist in any way that I can.

I have placed an inquiry on your behalf to Jackson National Life Insurance Company. Once a decision has been determined you will receive a response from the Jackson National Life Insurance Company.

 Please feel free to reach out to my Seattle office regarding any future issues with a Federal Government Agency. You can reach my Seattle office by phone at 206-553-5545 or by fax at 206-553-0891.

Sincerely,

Patty Murray
United States Senator

PM\ma

154 RUSSELL SENATE OFFICE BUILDING
WASHINGTON, DC 20510–4704
(202) 224–2621

2930 WETMORE AVENUE
SUITE 903
EVERETT, WA 98201–4107
(425) 259–6515

2988 JACKSON FEDERAL BUILDING
915 2ND AVENUE
SEATTLE, WA 98174–1003
(206) 553–5545
TOLL FREE: (866) 481–9186

10 NORTH POST STREET
SUITE 600
SPOKANE, WA 99201–0712
(509) 624–9515

950 PACIFIC AVENUE
SUITE 650
TACOMA, WA 98402–4450
(253) 572–3636

THE MARSHALL HOUSE
1323 OFFICER'S ROW
VANCOUVER, WA 98661–3856
(360) 696–7797

website: http://murray.senate.gov
e-mail: http://murray.senate.gov/email

PRINTED ON RECYCLED PAPER

402 EAST YAKIMA AVENUE
SUITE 420
YAKIMA, WA 98901–2760
(509) 453–7462

**Disability Management Services, Inc.**
*A Third Party Administrator for:*
**Jackson National Life Insurance Company**
*1350 Main Street, Springfield, MA 01103-1641*
*Tel: (413) 747-0990 or (800) 883-0596  Fax: (413) 747-1545*



September 23, 2015

Sherril Artis
2200 Romine Rd
Little Rock, AZ  72204

Re:  Policy Number:  MBH416398
     Claim Number:     10062410

Dear Ms. Artis:

Thank you for speaking with me today with regard to the status of your claim under your Jackson National Life Insurance Company disability income policy.

As we discussed, we are in receipt of all completed claim forms.  Medical records have been obtained from Vancouver Clinic for review.  You have provided the name of a contact person to follow up on our request for employment information.  Please keep us informed of any change of address and additional treatment.

I may be contacted at (800) 883-0596, ext. 1068 with any questions regarding your claim.

Sincerely,

Sandra  Himmelwright
Claim Consultant

*d/b/a:  New England Claims Administration Services, Inc. in FL, MD, ME, TX*
*Licensed as New England Claims Administration Services, Inc. in CA*
*d/b/a: Centre Claims Administration Services in NH*

**Disability Management Services, Inc.**
*A Third Party Administrator for:*
**Jackson National Life Insurance Company**
*1350 Main Street, Springfield, MA 01103-1641*
*Tel: (413) 747-0990 or (800) 883-0596  Fax: (413) 747-1545*



February 26, 2016

Sherril Artis
1309 SE Park Crest Avenue
Vancouver, WA  98683

Re:  Policy Number:  MBH416398
       Claim Number:     10062410

Dear Ms. Artis:

Thank you for speaking with me today with regard to your claim under your Jackson National Life Insurance Company disability income policy.

As discussed, enclosed is a Release Agreement.  Please review, sign and date this document, having your signature witnessed and return the original to our office along with your policy. Upon receipt, we will immediately issue a check in the amount of $45,000.

You may contact my associate, Cassandra Schutt, at 800-883-0596, Ext. 1027, with any questions in this regard.

Sincerely,

Sandra  Himmelwright
Claim Consultant

Enclosure

*d/b/a:  New England Claims Administration Services, Inc. in FL, MD, ME, TX*
*Licensed as New England Claims Administration Services, Inc. in CA*
*d/b/a: Centre Claims Administration Services in NH*

# FedEx
Office

# Fax Cover Sheet

Date _2/17/16_                   Number of pages _3_ (including cover page)

## To:
Name _Sandra Himmelwright_

Company _Disability Management_

Telephone _____

Fax _43 - 747 - 1545_

## From:
Name _Sherril Artis_

Company _____

Telephone _____

Comments _Letter Attached Regarding Lumpsum and Monthly payments._

Fax - Local Send

Fax - Domestic Send

Fax - International Send

fedex.com 1.800.GoFedEx 1.800.463.3339

© 2015 FedEx. All rights reserved. Products, services and hours vary by location. 615.0P00.002

0017745PM

Sandra,

I am writing to provide you with additional documentation provided by Dr. Jens Metzger.  I am not sure if this will influence the final decision that you would like to make on my claim for benefits.  I feel violated with having to decide between a lump sum and monthly benefits.  Being disabled makes me income challenged.  When I paid my premiums for the last 25 to 30 years for this insurance, I believed that I was insuring myself for this day.  The insurance company has taken my money and they are using it to their advantage.  I paid premiums from 1988 to the present day.  That is 27 years at about $400 per year.  If you just multiply the premiums I have paid in excess of $10000 in premiums alone.  If I was to be back paid for the past 10 months that I have been waiting, you are looking at $8800.00 that would have been due me.  I am $18800 in the hole and I am offered $30000.  So my insurance of 27 years will net me $11000.  I might have been better off investing the $400 per year in the stock market.  I need income and not the lump sum resource.  I see now that my paying insurance was not for my benefit but for the benefit of the insurance company.  Even a lump sum of the full $61000 would not be the answer that I am seeking.  I need monthly benefits more than a lump sum!!

I could take the $30000,  that is being offered, and set it up with an annuity but I will have to pay for that service and the monthly amount will be a lot less than $884.00 per month.  I could take the $30000 and go back to school in order to better myself for future employment, but I am just too sick to go to school and retain the information.  I have been sick since 2012 and it has not gotten any better.  The only thing that has improved is my outlook on my illness.   There is not enough medical information or research being done on sarcoidosis.  It is a pretty complicated disease.  Add diabetes that is worse due to the sarcoidosis treatment.  Not always being able to breath, walking being painful, body aches and pain.  I am sick and unable to work.   Is this not what this insurance is for?  I would feel more validated if you offered my premiums back with 27 years of interest.

It seems that my insurance is almost on the same mission as my last employer.  Yes I wanted to work until 02/2016 but I had no guarantee that I would have been able to make it or to work on until I was 62 years old.  I always carried health insurance under my spouse.  When I found out in 2010 that I had to have my own insurance for 5 years prior to retirement before I would be able to take my insurance into retirement, I enrolled in the insurance ASAP.  One year later I was sick.  Can you imagine how many times over the last 5 years that I have wished to have had that insurance earlier?  I am surprised that I made it to 2015.  I am a strong person.  I can take a lot of pain and deal with a lot of heartache.  That is over now?  I no longer have to, need to, or want to deal with pain inflicted on me by others.

If I have to take a lump sum, I am not willing to take any less than $45000.00.  The ideal situation for me would be to receive monthly payments.  Being disabled makes me income challenged.  I paid for this insurance so that I could have a monthly payment, in the case of disability.  The third option would be to drop this current claim until I have proven that I am disabled and qualify and deserve the monthly payments.